CHICAGO ALLIANCE FOR NEIGHBORHOOD SAFETY, Plaintiff-Appellant
and Cross-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees
and Cross-Appellants.

First District (6th Division)   No. 1—01—1588

Opinion filed March 26, 2004.

Miller, Shakman & Hamilton (Marc O. Beem, Diane F. Klotnia, and Michael S. D'Orsi, of counsel), and Roger Baldwin Foundation of American Civil Liberties Union (Harvey Grossman and Jane M. Whicher, of counsel), both of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, Marc J. Boxerman, David A. Graver, and Erika Dunning, of counsel), for appellees.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff, the Chicago Alliance for Neighborhood Safety (CANS), brought this six-count complaint against defendants the City of Chicago (City) and the Chicago police department (Department) seeking equitable relief under the Illinois Freedom of Information Act (FOIA or the Act) (5 ILCS 140/1 et seq. (West 2000)). After defendants produced most of the records sought by plaintiff in its complaint, the parties filed cross-motions for summary judgment on counts I, II, III, and IV. The trial court entered summary judgment in favor of defendants on count IV and, following a bench trial, entered judgment

in favor of defendants on counts I, II, and III. Plaintiff appeals the order granting summary judgment for defendants on count IV and the judgment after trial for defendants on counts I, II and III. Defendants cross-appeal fees awarded to plaintiff.

## BACKGROUND

Count I sought, pursuant to section 9(b) of the Act (5 ILCS 140/9(b) (West 2000)), a writ of *mandamus* directing defendants to maintain all notices of denial in a single central office file open to the public and indexed according to the type of exemption asserted and, to the extent feasible, according to the types of records requested. Count II sought a writ of *mandamus* directing defendants to maintain and make available a detailed list of the types and categories of records under the Department's control pursuant to section 5 of the Act (5 ILCS 140/5 (West 2000)). Count III alleged defendants violated the Act by denying plaintiff's July 2, 1998, written request for copies of all FOIA requests to, and responses from, the Department from 1993 to the date of its request. Count III sought an injunction directing defendants to make available for inspection and copying all FOIA requests from January 1, 1993, to the date of judgment and the responses to those requests. Count IV alleged defendants violated the Act by denying plaintiff's request for "beat meeting forms," dispatch policy orders, and "beat integrity summaries" and sought an order directing the documents be made available. Counts V and VI requested overtime expenditures and district plans.

Defendants provided plaintiff with access to various documents— beat meeting forms (count IV), FOIA requests and responses to those requests (count III), and FOIA denial files (count I)—with redactions. Before disclosing beat meeting forms, defendants redacted names and addresses of "community liaisons" and participants. Defendants disclosed, pursuant to a protective order entered by the court on June 9, 1999, and an agreed order entered on August 20, 1999, FOIA requests and responses which the Department had in its possession. The protective order required defendants to produce these documents but restricted plaintiff's use of the information. The order barred plaintiff from disclosing names and addresses of individual FOIA requesters without leave of court and provided that requests and responses "shall be deemed 'constructively redacted.' " The order reserved plaintiff's right to challenge redactions, which applied only to individual requesters, not to organizations making FOIA requests. The Department began to maintain a file of notices denying FOIA requests (denial file) after plaintiff's initial request to inspect the file in May 1998 and provided plaintiff access to this file with names and

addresses of FOIA requesters redacted. Defendants also tendered un-redacted copies of the denials to plaintiff subject to the trial court's protective order.

Before trial, dispatch policy orders and beat summaries requested in count IV and all documents requested in counts V and VI were disclosed to plaintiff without redaction. Although defendants initially responded that many documents were exempt from disclosure or too burdensome to produce, they ultimately tendered most documents. The parties then filed cross-motions for summary judgment as to unresolved issues in counts I, II, III and IV.

Defendants' motion for summary judgment as to counts III and IV alleged names and addresses of beat meeting participants and FOIA requesters were properly redacted pursuant to section 7(1)(b) of the Act. The Department's pamphlet entitled "Getting the Most From Your Beat Meeting" was attached to its "motion for summary judgment as to documents identified as privileged." That pamphlet stated "[b]eat meetings are regular meetings *** where police and community residents meet to exchange information about conditions in neighborhoods, identify crime and disorder problems, and develop strategies to combat those problems." The pamphlet stated "[t]he purpose of the beat meeting is to allow beat residents, other stakeholders and police to discuss chronic problems on the beat and engage in problem solving."

Plaintiff filed a motion for summary judgment on counts I and II and a cross-motion for summary judgment on counts III and IV. Plaintiff attached exhibits to its cross-motion, including the Department's General Order 96—3, Addendum 5 (General Order 96—3) and a confidentiality agreement entered into by the Department and the Chicago Community Policing Evaluation Consortium. General Order 96—3 provides the beat community meeting log "serves as the official record of the beat community meeting" and "feeds into the beat-planning and problem-solving process."

Defendants filed a cross-motion for summary judgment on counts I and II contending the Department's denial file complied with section 9(b) of the Act and its list of categories of records complied with section 5 of the Act. Defendants filed a response to plaintiff's cross-motion for summary judgment and attached to it the affidavit of Professor Wesley Skogan from the Institute for Policy Research, Northwestern University (IPR). Skogan stated in his affidavit he was a political scientist and a faculty fellow at IPR, a public policy research organization. Since 1992, IPR, as part of the Chicago Community Policing Evaluation Consortium, has monitored and evaluated the Community Alternative Policing Strategy (CAPS) program. For that

evaluation, the City provided IPR with beat meeting forms including names and addresses of beat meeting participants. Skogan stated IPR agreed to and did in fact keep the disclosed information confidential.

After conducting a hearing, the court denied the parties' motions and cross-motions on counts I, II, and III and granted defendants' motion for summary judgment on count IV, stating:

> "[T]he issue within count IV is whether the names of the Beat Meeting participants should be redacted from the Beat Meeting forms by the Chicago Police Department. Section 7(1)(b)[v] of the FOIA states that information exempted from disclosure under this subsection includes information revealing the identity of persons who filed complaints with or provide information to administrative, investigative, law enforcement or penal agencies. [Citation.] Referring to Section 7(1)(b), the Illinois Supreme Court has stated that when a public body claims that a requested document falls within one of these enumerated categories and is able to prove that claim, no further inquiry by the Court is necessary. *** In the present case, participants at the Beat Meetings who are then listed in the minutes of those meetings are clearly providing information to law enforcement agencies. In fact that is one of the specific purposes of those meetings. Accordingly, this Court finds that the names of those participants are properly redacted on the Beat Meeting forms."

The court conducted a bench trial on what plaintiff and defendants agreed were the remaining issues in the case regarding counts I, II and III. The court identified those issues as follows:

1. Whether the Department's file of letters denying FOIA requests meets the requirements of section 9(b) of the Act;

2. Whether the Department's proposed list of "all types or categories of records under its control" satisfies section 5 of the Act; and

3. Whether the Department is entitled to redact, based on privacy, under section 7(1)(b) of the Act, the names and addresses of persons who make requests under the Act, "as those names and addresses appear in: (a) FOIA requests; (b) FOIA response letters; and (c) the [D]epartment's file of letters denying FOIA requests."

It was stipulated at trial that various city departments and state agencies, including the Illinois State Police, Illinois Attorney General's office, Springfield police department, and Sangamon County sheriff's department, produced without redaction FOIA requests and responses to requests.

Warren Friedman, a member of plaintiff's board of directors who had served as plaintiff's executive director for 17 years, testified for plaintiff regarding its purpose and how it sought to advance that

purpose through FOIA requests. Friedman stated plaintiff's general purpose is "to work with community people and community organizations to make neighborhoods safer places to live for all residents." Monitoring government to ensure it acts in the public interest is critical to plaintiff's purpose. Friedman explained plaintiff sought information under the Act to "understand ourselves and train others and help—and give technical assistance to others to act more effectively in their relations with the police and in their desire to make communities safer." Friedman stated plaintiff requested access to denial files to determine whether the Department was treating FOIA requests differently "because of where [the requesters] live geographically, that is because of perhaps race or class." Friedman explained plaintiff wanted to contact people listed in the Department's files in order to organize them to promote causes they shared with plaintiff. Friedman explained plaintiff was interested in denial files to discover whether plaintiff was being denied information given to others, to have an opportunity to talk to others being denied information, and to identify possible common interests and possibly take action on denials. Friedman acknowledged plaintiff had received unredacted copies of denial letters. However, he stated the protective order's restrictions regarding use of names and addresses eliminated plaintiff's ability to make public any information it might develop about the Department's treatment of FOIA requesters. Thus, Friedman explained, plaintiff had not devoted its limited resources to a systematic review of the documents.

On cross-examination, Friedman was asked whether plaintiff's counsel had ever requested the trial court to clarify whether the protective order allowed plaintiff to publish a study "that talked about geography or some other study based upon the FOIA information." Friedman answered "Not to my knowledge, no." In addition, Friedman acknowledged plaintiff used redacted beat meeting forms it received to publish studies in its newsletters, but it did not use the names of persons attending those meetings.

James Hickey and Carmella Means testified for defendants. Hickey, assistant director of the Department's records division, oversees the Department's resolution of FOIA requests. Hickey stated when he joined the records division in July 2000, the Department's FOIA denial file was not current. Hickey selected Officer Means as the Department's FOIA officer and instructed her to ensure the denial file was complete for the year 2000 and remained up to date. Hickey stated the denial file is available for public inspection at the records division; however, names and addresses of individual requesters are redacted in the denial file out of concern for requesters' privacy.

Hickey stated the file is maintained manually on a word process-

ing document and is indexed by type of exemption asserted, not by type of document requested, due to a lack of resources to index by type of document requested. Although there is no computer database program, he hopes to computerize records on a database in the future in order to facilitate additional indexing. During cross-examination, Hickey stated that he was unaware of any "book of denials" containing denials issued before 1998. Thereafter, defense counsel stipulated that the denial file did not comply with the Act prior to the initiation of plaintiff's action.

Officer Means testified she has maintained the Department's FOIA denial file since becoming the FOIA officer in August 2000. To update for the year 2000, Officer Means manually went through each file for every FOIA request made that year to verify whether it contained a denial letter. If she found a denial letter, she checked the denial file to confirm the file contained a copy. If the file did not contain a copy of the denial letter, she copied it and placed it in the denial file. Officer Means is the only person who indexes the file. She continues to place a denial letter in the denial file for every FOIA request denied. On cross-examination, Means stated it would be feasible to physically index denials by major categories of documents; with help she could index more categories of documents.

Count II alleged the tendered list of categories of documents under the Department's control violated section 5 of the Act because it was not sufficiently detailed and sought a writ of *mandamus* directing defendants to prepare, maintain, and provide such a list. During opening statement, plaintiff's counsel asserted the Department's section 5 list attached to plaintiff's complaint was deficient because it "does not describe in any helpful way documents that are kept electronically." During opening statement defense counsel referred to a proposed revised list that the Department intended to use. Defense counsel stated he tendered that revised list to the court before trial and that it provided a complete list of document types, including an attached index of specific documents. Defense counsel did not offer that revised list into evidence during trial. During closing argument, plaintiff's counsel noted no evidence was presented indicating the Department had implemented any new list. In closing, defense counsel acknowledged the revised list had not been offered into evidence, but indicated this new list would be implemented.

In ruling on counts I and III, the court found disclosure of names and addresses would constitute an invasion of personal privacy under section 7 of the Act, and that the Department was thus justified in redacting names and addresses of FOIA requesters from the requests, responses and denial file. As to count II, the court stated the City "has

now presented a list of 'all types or categories of records under its control' and it substantially meets the requirements of Section 5." Plaintiff appeals summary judgment for defendants on count IV and judgment for defendants after trial on counts I, II, and III. Defendants cross-appeal the award of fees to plaintiff.

## I. SUMMARY JUDGMENT ON COUNT IV

■ Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2 1005(c) (West 2000); *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 30-31 (1999). Our review of a grant of summary judgment is *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001).

Plaintiff challenges summary judgment on count IV, contending defendants violated the Act by failing to provide plaintiffs with beat meeting forms containing names and addresses of community liaisons. Defendants contend names and addresses redacted from the beat meeting forms are *per se* exempt under section 7(1)(b)(v) of the Act.

■ "The Act implements the public policy of this state to provide its citizens with full access to information regarding the affairs of government." *Chicago Journeymen Plumbers' Local Union 130 v. Department of Public Health*, 327 Ill. App. 3d 192, 195 (2001). Public records are presumed to be open and accessible under the Act, and section 3(a) of the Act provides that a public body must comply with a request for such records unless one of the Act's exemptions applies. *Chicago Journeymen*, 327 Ill. App. 3d at 195; 5 ILCS 140/3(a) (West 2000). "The exemptions are set forth in section 7 of the Act." *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 408 (1997). If a public body denies a request and the requesting party challenges the denial in the circuit court, "the public body has the burden of proving that the records in question fall within the exemption it has claimed." *Lieber*, 176 Ill. 2d at 408.

■ Section 7(1) of the Act states in relevant part:
  "(1) The following shall be exempt from inspection and copying:
    ***

  (b) Information that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (b) shall include but is not limited to:

\* \* \*

(v) *information revealing the identity of persons who* file complaints with or *provide information to* administrative, investigative, *law enforcement* or penal *agencies*[.]" (Emphasis added.) 5 ILCS 140/7(1)(b)(v) (West 2000).

■Subsection (b) sets forth a general exemption as well as a series of specific exemptions. *Chicago Tribune Co. v. Board of Education of the City of Chicago*, 332 Ill. App. 3d 60, 65 (2002). The general exemption, included in the first sentence of subsection (b), applies when a public body establishes that "the requested information constitutes a clearly unwarranted invasion of personal privacy." *Chicago Tribune*, 332 Ill. App. 3d at 65. The specific exemptions apply to the particular types of public records and information which are listed in subparagraphs (i) through (v). *Lieber*, 176 Ill. 2d at 408; *Chicago Tribune*, 332 Ill. App. 3d at 65. "If the public body contesting disclosure claims that the general exemption applies, the court must evaluate the information on a case-by-case basis and conduct a balancing test to determine whether the disclosure would constitute a clearly unwarranted invasion of personal privacy." *Chicago Tribune*, 332 Ill. App. 3d at 65. However, if the public body can prove that a requested document falls within a category specifically enumerated in section 7, the document shall be *per se* exempt from inspection and copying and "no further inquiry by the court is necessary." *Lieber*, 176 Ill. 2d at 408.

In the instant case, the trial court concluded at the summary judgment stage that the names and addresses of beat meeting participants were properly redacted from the beat meeting forms pursuant to the *per se* exemption included in section 7(1)(b)(v) of the Act. Plaintiff contends that the trial court improperly applied section 7(1)(b)(v)'s *per se* exemption to grant summary judgment on count IV and alternatively contends that even if that exemption was applicable, defendants waived their right to redact the requested material. Thus, regarding count IV, the first issue is whether names and addresses of beat meeting participants are *per se* exempt from disclosure under section 7(1)(b)(v) of the Act. If such information is *per se* exempt, the next issue is whether that exemption was waived by defendants.

■ To determine whether the *per se* exemption was applicable, we must construe section 7(1)(b)(v) of the Act. Section 7(1)(b)(v), as noted above, specifically exempts from inspection and copying "information revealing the identity of persons who file complaints with or provide information to administrative, investigative, law enforcement or penal agencies." 5 ILCS 140/7(1)(b)(v) (West 2000). The primary objective when construing the meaning of a statute is to ascertain and give effect to the legislature's intent beginning with the language of the

statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole. Words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute." *Michigan Avenue*, 191 Ill. 2d at 504.

Defendants contend the trial court correctly determined that names and addresses redacted from beat meeting forms requested in count IV "fall[ ] squarely within the purview of [the specific] exemption because the very purpose of the beat meetings is to provide a forum where community residents can identify and resolve crime problems with the Department, which, of course, is a law enforcement agency." In support of this contention, defendants rely upon a brochure and general order fact sheet issued by the Department. General Order 96—3 fact sheet states:

> "Beat community meetings are regular meetings, held on every police beat in the City, that provide an opportunity for police and members of the community to meet, *exchange information*, and identify and discuss crime and disorder problems on the beat." (Emphasis added.)

In addition, a Department brochure made available to the public specifically states:

> "Beat meetings are regular (often monthly) meetings *** where police and community residents meet to *exchange information* about conditions in the neighborhood, identify crime and disorder problems, and develop strategies to combat those problems." (Emphasis added.)

Plaintiff recognizes section 7(1)(b)(v) exempts from disclosure information revealing the identity of those who file complaints with or provide information to law enforcement agencies and does not dispute the Department is a law enforcement agency or that the community liaisons file complaints with or provide information to the Department. Plaintiff contends, however, the section 7(1)(b)(v) exemption "cannot be applied so literally" but, rather, applies only to identities of persons who provide information to law enforcement "in confidence." Plaintiff relies upon the general rules of statutory construction that "[c]ommon sense must play a role in the construction of statutes" and "[r]egulations must be reasonably construed in light of their purpose and in accordance with their practical application." *Village of Bloomingdale v. Meline*, 309 Ill. App. 3d 389, 391-92 (1999). Plaintiff contends literal application of section 7(1)(b)(v) "would authorize keeping secret the identities of most persons having any

sort of communication with government" and reasons the section 7(1)(b)(v) exemption "only comports with common sense if its application is limited under circumstances where an expectation of confidentiality can reasonably be implied." Plaintiff argues that the facts that beat meetings are open to the public, that community liaisons, according to a Department general order, "serve[ ] as the 'primary community representative' in developing and implementing problem-solving strategies," that community liaisons' names are entered on beat meeting forms, and that these forms constitute the minutes and "the official record" of these meetings demonstrate that community liaisons do not have an expectation of confidentiality precluding the Department from redacting their names and addresses.

■ We reject plaintiff's interpretation of section 7(1)(b)(v). Plaintiff's interpretation is not supported by the plain language of the statute. Section 7(1)(b)(v) does not state it exempts from disclosure names of people who provide information to a law enforcement agency only if those persons have a reasonable basis to believe their names are going to be kept confidential. Rather, the plain language of the statute states "information revealing the identity of persons who file complaints with or provide information to *** law enforcement *** agencies" is exempt from disclosure. 5 ILCS 140/7(1)(b)(v) (West 2000). Furthermore, we note that section 7(1)(c)(iv) of the Act separately exempts from disclosure information that would "unavoidably disclose the identity of a confidential source or confidential information furnished only by the confidential source." 5 ILCS 140/7(1)(c)(iv) (West 2000). This section reflects the legislature could have drafted a statutory provision exempting from disclosure names of those providing information in confidence but chose not to add this additional requirement to the section 7(1)(b)(v) exemption at issue here.

■ Plaintiff argues in the alternative, relying upon *Lieber*, that even if the exemption in section 7(1)(b)(v) were applicable, defendants waived the exemption by releasing unredacted copies of beat meeting forms to researchers at IPR. In *Lieber*, plaintiff, an apartment building owner, submitted FOIA requests to a nearby university, seeking disclosure of names and addresses of first-year students who had contacted the university regarding housing. *Lieber*, 176 Ill. 2d at 403-05. Although the university argued names and addresses of students were private and exempt from disclosure, it routinely provided that information to other groups, including a newspaper and religious organizations. *Lieber*, 176 Ill. 2d at 412-13.

The supreme court found prior disclosure waived the right of the university to refuse disclosure to plaintiff under an exemption in the Act. *Lieber*, 176 Ill. 2d at 412-13. In support of its finding, the supreme

court noted that "under the federal Freedom of Information Act, the federal courts have held that voluntary disclosure in one situation can preclude later claims that records are exempt from release to someone else." *Lieber*, 176 Ill. 2d at 413. The supreme court concluded "[i]f the address lists can be disclosed to campus ministries and the local newspaper, the University has no valid basis for withholding them from [the FOIA requester]." *Lieber*, 176 Ill. 2d at 413. We note *Lieber* did not address the issue in the instant case regarding whether disclosure made for consultation purposes and limited to a single entity which treated names and addresses as confidential waives exemption under section 7(1)(b)(v).

We are mindful that the Illinois Act, although different from the federal statute, is patterned after that statute and that the lawmakers intended that federal case law should be used in interpreting the Act. *Cooper v. Department of the Lottery*, 266 Ill. App. 3d 1007, 1012 (1994). Regarding waiver, we find instructive the federal case of *Lakin Law Firm, P.C. v. Federal Trade Comm'n*, 352 F.3d 1122 (7th Cir. 2003). In *Lakin*, attorneys filed a federal FOIA request with the Federal Trade Commission (FTC) seeking consumer complaints about certain fraudulent business practices. *Lakin*, 352 F.3d at 1123. The FTC complied with the request but withheld names and addresses of individuals who made the complaints. *Lakin*, 352 F.3d at 1123. Responding to a waiver argument similar to the waiver argument made by plaintiff in the instant case, the court in *Lakin* noted that "[t]he fact that a limited group of law enforcement officials has access to these nonpublic files does not alter the individual consumers' privacy interests in keeping their identities and home addresses free from general public disclosure." *Lakin*, 352 F.3d at 1124.

The waiver rule must not be mechanically applied whenever there is disclosure of information but, rather, requires consideration of the circumstances related to the disclosure, including the purpose and extent of the disclosure as well as the confidentiality surrounding the disclosure. See *Mobil Oil Corp. v. United States Environmental Protection Agency*, 879 F.2d 698, 700 (9th Cir. 1989) (noting that "[t]he inquiry into whether a specific disclosure constitutes waiver is fact specific" and requires consideration of the circumstances of the prior disclosure). In the instant case, the circumstances surrounding disclosure do not support a finding of waiver. Here, unlike *Lieber*, disclosure was not made without any restrictions to multiple entities, including a newspaper and religious organizations. Rather, disclosure was made for consultation purposes and limited to a single entity which treated the names and addresses as confidential. The information was distributed to IPR, an entity monitoring and evaluating the City's CAPS program.

The evidence establishes IPR agreed to, and in fact did, maintain confidentiality of that information. Professor Skogan's affidavit demonstrates IPR agreed to keep the disclosed information confidential. Professor Skogan specifically stated "[p]ursuant to our agreement with the City, the IPR *** [has] treated the names and addresses contained in those Beat Meeting Forms as confidential. We have not disclosed the names and addresses of Beat Meeting Participants to anybody or in any forum, including our written evaluation of the CAPS program. The IPR and the Consortium will continue to zealously protect the confidentiality of Beat Meeting Participants ***." Plaintiff cites no evidence refuting Skogan's affidavit and failed to establish a genuine issue of material fact regarding the waiver issue.

■ For the reasons previously discussed, redaction of names and addresses of community liaisons was proper under section 7(1)(b)(v) "as those persons are clearly providing information to law enforcement agencies" and disclosure to IPR did not waive the section 7(1)(b)(v) *per se* exemption. Summary judgment for defendants on count IV was proper.

## II. COUNTS I and III

Plaintiff challenges the judgment entered after trial in favor of defendants on counts I and III. Count I sought, pursuant to section 9(b) of the Act, a writ of *mandamus* requiring the Department to maintain all notices of denial of FOIA requests, including requesters' names and addresses, in a single central file open to the public and indexed by the type of exemption invoked and, to the extent feasible, by the type of document sought in each denied FOIA request. Count III alleged the Department violated section 3 of the Act by failing to produce all FOIA requests and the Department's responses to those requests, including names and addresses of requesters, and sought an injunction ordering the Department to give plaintiff copies of FOIA requests and responses. Specifically at issue are the names and addresses of persons who made requests under the Act, as these names and addresses appear in: (a) FOIA requests; (b) FOIA response letters to FOIA requests; and (c) the FOIA denial file.

■ The burden of demonstrating a basis for redacting information from records requested under FOIA is on the public body that has redacted the subject information. 5 ILCS 140/11(f) (West 2000). To the extent plaintiff challenges the factual basis supporting the judgment on counts I and III, we determine whether that judgment is against the manifest weight of the evidence. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 192-93 (1989) (factual determination made by trial court will not be disturbed on appeal unless it is contrary

to the manifest weight of the evidence). To the extent plaintiff challenges the judgment on legal grounds, we apply *de novo* review. *Michigan Avenue*, 191 Ill. 2d at 503 (construction of statute raises issue of law subject to *de novo* review).

Regarding count I, plaintiff contends section 7(1)(b) does not exempt from disclosure the names and addresses of FOIA requesters included in denials maintained pursuant to section 9(b). Plaintiff contends that section 7(1)(b)'s general exemption does not apply to denials of FOIA requests maintained pursuant to section 9(b). Plaintiff further contends that even if denials maintained pursuant to section 9(b) are subject to section 7(1)(b)'s general exemption, the exemption does not specifically apply to the names and addresses redacted from the denials because disclosure of that information to plaintiff would not constitute a clearly unwarranted invasion of personal privacy.

Regarding count III, plaintiff seeks access to all FOIA requests submitted to the Department and the Department's responses to those requests, without redaction of requesters' names and addresses. Section 3(a) of the Act requires public bodies to produce documents requested under the Act subject to exemptions included in section 7 of the Act. 5 ILCS 140/3(a) (West 2000). Plaintiff does not dispute the general exemption included in section 7(1)(b) of the Act applies to public records requested under section 3(a) of the Act and that information in such records may thus be redacted to the extent disclosure would constitute a clearly unwarranted invasion of personal privacy. Plaintiff does dispute that disclosure of the requested information constitutes a clearly unwarranted invasion of personal privacy. Accordingly, as to names and addresses of FOIA requesters sought in counts I and III, we address the following issues: (1) as to count I, whether information included in the section 9(b) denial file is subject to general section 7(1)(b) exemption and whether the denial file satisfies section 9(b) indexing requirements; and (2) as to counts I and III, whether disclosure of FOIA requesters' names and addresses would constitute a clearly unwarranted invasion of personal privacy.

### A. Section 7(1)(b) Exemption Applies to Section 9(b) Notices of Denial

■ Count I alleged defendants violated section 9(b) by failing to maintain a file of denials and sought a writ of *mandamus* directing defendants to comply with the requirements included in section 9(b) of the Act. Section 9(b) provides:

> "When a request for public records is denied on the grounds that the records are exempt under section 7 of this Act, the notice of denial shall specify the exemption claimed to authorize the denial.

Copies of all notices of denial shall be retained by each public body in a single central office file that is open to the public and indexed according to the type of exemption asserted and, to the extent feasible, according to the types of records requested." 5 ILCS 140/9(b) (West 2000).

Without requesters' names and addresses, plaintiff argues, it is impossible to determine whether the Department responded to requests in an impartial manner and impossible to contact individuals to challenge their treatment by the Department. In determining whether the section 7(1)(b) exemption applies to denials maintained in the section 9 denial file, we construe the Act using previously noted rules of statutory construction.

■ The plain language of section 7(1)(b) prohibits inspection and copying of "[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy." 5 ILCS 140/7(1)(b) (West 2000). This prohibition is not absolute. The plain language of section 7(1)(b) includes an exception expressly authorizing disclosure if "the disclosure is consented to in writing by the individual subjects of the information." 5 ILCS 140/7(1)(b) (West 2000). In addition, section 7(1)(b) specifies "information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." 5 ILCS 140/7(1)(b) (West 2000). The plain language of section 7(1)(b) does not, however, state that its general prohibition against disclosure of information which would constitute a clearly unwarranted invasion of privacy shall not apply if that information is included in a section 9(b) denial file. Nor does the plain language of section 7(1)(b) restrict application of its general prohibition against disclosure depending upon the statutory section of the Act under which access to information is sought. Thus, the plain language of section 7(1)(b) reflects the legislature intended that all requests to inspect and copy public records be subject to the general exemption included in that section unless subjects of the records consent to disclosure or information sought relates to public duties of public employees and officials.

Plaintiff observes the plain language of section 9(b) requires notices of denial to be retained in a file "open to the public" and does not indicate notices of denial are subject to exemptions included in section 7. Plaintiff argues although section 3(a) provides public records must be disclosed "except as otherwise provided in section 7 of this Act," the plain language of section 9(b) does not state notices of denial shall be retained in a file open to the public "except as otherwise provided in section 7 of this Act." The absence in section 9(b) of language referencing section 7, plaintiff argues, indicates the

legislature did not intend for information in a denial file to be subject to section 7 exemptions.

The plain language of section 7(1)(b) does not indicate that the applicability of its general exemption is contingent upon the section of the Act under which the disputed information is requested. Rather, it reflects its applicability is contingent upon the substance of the information itself and the extent to which disclosure of the information would constitute a clearly unwarranted invasion of personal privacy. Plaintiff's argument, however, is based on the premise that while privacy interests are relevant when a request is made under section 3, those same privacy interests are not relevant to requests to access notices of denial under section 9(b). Plaintiff's interpretation, whereby section 7(1)(b) applies to section 3(a) but not to section 9(b), would make the same information, such as requesters' names and addresses reflected in the denial file, available under section 9(b) but not under section 3(a). Indeed, it would make information available based, not upon its substance and the extent to which its disclosure would constitute a clearly unwarranted invasion of personal privacy, but rather upon the statutory section of the Act under which it was sought. Such an absurd and inconsistent result could not have been intended by the legislature. See *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 508 (2003) (in construing a statute, courts presume lawmakers did not intend absurdity, inconvenience or injustice). The Act should be not be construed so that one provision eliminates the privacy interests protected by another provision. Adopting plaintiff's interpretation applying section 7(1)(b) to section 3(a) but not to section 9(b) would do precisely that. See *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 484 (1992) (provisions of statute taken as a whole should be interpreted consistently).

Plaintiff recognizes that the notices of denial qualify as "public records" subject to disclosure under section 3, and such records are ordinarily subject to the general exemption included in section 7(1)(b). Plaintiff argues, however, that if the legislature intended notices of denial to be produced only in accordance with section 3(a), it would not have expressly required in section 9(b) that notices of denial be retained in a file "open to the public." Plaintiff contends interpreting the general section 7(1)(b) exemption to apply to information included in the section 9(b) denial file would render meaningless section 9(b)'s provision that denial notices be retained in a file "open to the public." Such an interpretation, plaintiff argues, would be inconsistent with the well-established rule that "[s]tatutes should be construed, if possible, so that no term is rendered superfluous or meaningless." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 26 (1996).

■ We reject plaintiff's argument that subjecting information in the section 9(b) denial file, namely, the names and addresses of the individual FOIA requesters included in the denial file, to the general section 7(1)(b) exemption renders superfluous section 9(b)'s provision that denials be maintained in a file open to the public. We recognize both section 3(a) and section 9(b) of the Act provide members of the public with a means of gaining access to denials of FOIA requests. Application of the general exemption to names and addresses of individual FOIA requesters included in the section 9(b) denial file does not render section 9(b)'s "open to the public" provision meaningless. Rather, it ensures protection of privacy interests of FOIA requesters consistent with the other provisions of the statute while allowing public access to notices of denial with requesters' names and addresses redacted. For the reasons previously discussed, consistent with the provisions of section 9(b), denials of FOIA requests "shall be retained" by the Department in a single central file "open to the public" (5 ILCS 140/9(b) (West 2000)); however, regarding names and addresses of FOIA requesters, the section 9(b) denial file is subject to general section 7(1)(b) exemption.

## B. Clearly Unwarranted Invasion of Personal Privacy by Disclosure

■ As to counts I and III, the next issue before us is whether disclosure of FOIA requesters' names and addresses constitutes a clearly unwarranted invasion of personal privacy. As previously noted, the plain language of section 7(1)(b) prohibits inspection and copying of "[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy." 5 ILCS 140/7(1)(b) (West 2000). We are mindful that the government agency "has the burden of proving that the records in question fall within the exemption it has claimed." *Lieber*, 176 Ill. 2d at 408. Unlike count IV, there is no *per se* exemption at issue as to counts I and III. Rather, defendants concede that "the FOIA requests and responses are not covered by a *per se* exemption; while they contain correspondence between private citizens and law enforcement, the correspondence is not intended to give information to the Department." Because no *per se* exemption is applicable, resolution of the disclosure issue requires us to balance the public's interest in disclosure against the individual's interest in privacy. See *Gibson v. Illinois State Board of Education*, 289 Ill. App. 3d 12, 20-21 (1997). In striking this balance, we consider the following factors: "(1) the plaintiff's interest in disclosure, (2) the public interest in disclosure, (3) the degree of invasion of personal privacy, and (4) the availability of alternative means of obtaining the requested information." *Lieber*, 176 Ill. 2d at 409.

As to the first *Lieber* factor, plaintiff identifies two interests that would be served by unrestricted access to names and addresses of FOIA requesters. First, plaintiff asserts that access to this information would enable it "to determine whether defendants are satisfying their obligations under FOIA generally *** [and] whether defendants' responses to FOIA requests are influenced by, or vary according to, the status or identity of the requester or where the requester lives and to determine whether CANS is being treated differently than other persons or organizations." Without unrestricted access to this information, plaintiff argues it could not make these determinations.

The record reflects that in June 1999 defendants provided plaintiff with unredacted copies of all FOIA requests and responses subject to the trial court's protective order barring plaintiff from disclosing names and addresses of individual requesters without leave of court. Plaintiff had this information for well over a year before trial and had a sufficient opportunity to review requests and responses to determine whether the Department treated requests differently, and in the event that it found disparate responses to similar requests, to review whether those responses were influenced by where the requester lived. Despite access to this information, plaintiff did not undertake these determinations.

At trial, Warren Friedman, a member of plaintiff's board of directors and its former executive director, admitted plaintiff had not organized FOIA requests by topic or undertaken any systematic review of these records. Nothing in the trial court's order constructively redacting requesters' names and addresses precluded plaintiff from publishing a study indicating requesters from certain neighborhoods were not getting the same responses as those with similar requests from other neighborhoods. To the extent plaintiff wanted to include names and addresses of requesters in such a study, it could have requested the trial court for leave to do so. However, Friedman's testimony indicates plaintiff's counsel never sought leave of the court to include this information in any type of published study. The record does not reflect the constructive redaction of names and addresses of the FOIA requesters prohibited plaintiff from pursuing its interest in determining whether the Department treated requests differently based upon where the requester lived.

The second interest that plaintiff believes disclosure would serve is its interest in "link[ing] up with people with common concerns about crime and about the police and to organize others to reform FOIA practices." We recognize disclosure could enable plaintiff to contact FOIA requesters and could potentially serve its interest in communicating with people who may have common concerns about

crime or the police. However, allowing plaintiff to contact FOIA requesters could also undermine the purpose the Act was intended to serve—providing citizens with full access to information regarding the affairs of government—by chilling use of the Act by citizens. We recognize crime victims, witnesses, and persons interested in crime prevention could be reluctant to request information if their requests would place their names and addresses on a public list of persons who have requested information from the Department. See *City of San Jose v. Superior Court*, 74 Cal. App. 4th 1008, 1022-23, 88 Cal. Rptr. 2d 552, 563-64 (1999).

In *City of San Jose*, the petitioner, a newspaper, requested from the City of San Jose names, addresses, and telephone numbers of individuals who had made written, telephonic, or e-mail complaints about airport noise as well as tapes and transcriptions of telephonic complaints. *City of San Jose*, 74 Cal. App. 4th at 1012, 88 Cal. Rptr. 2d at 555. The newspaper sought this information in order to individually contact the complainants and confirm their complaints had been properly recorded and reported by the City. *City of San Jose*, 74 Cal. App. 4th at 1022-23, 88 Cal. Rptr. 2d at 563-64. The trial court ordered disclosure of the complaints, including information identifying complainants that was not expressly exempted by statute, and on appeal the City argued disclosure would have a chilling effect and reduce the number of complaints. *City of San Jose*, 74 Cal. App. 4th at 1014-15, 1022, 88 Cal. Rptr. 2d at 557-58, 563. The newspaper responded the City's arguments were based on speculation rather than evidence of any citizen being deterred from making a complaint because of disclosure of name or address. *City of San Jose*, 74 Cal. App. 4th at 1022, 88 Cal. Rptr. 2d at 563. The reviewing court acknowledged absence of evidence that any citizen was deterred from making a complaint because of disclosure. *City of San Jose*, 74 Cal. App. 4th at 1024, 88 Cal. Rptr. 2d at 564. It held, however, that information identifying complainants should be redacted from complaints and reasoned "it may be fairly inferred, on the basis of human experience, that it is likely that public disclosure of airport complainants' names, addresses, and telephone numbers will have a chilling effect on the number of complaints made." *City of San Jose*, 74 Cal. App. 4th at 1024, 88 Cal. Rptr. 2d at 564.

Regarding the second *Lieber* factor, the interest of the public in disclosure, plaintiff argues that requiring the Department to maintain notices of denial with names and addresses unredacted in a central file open to the public under section 9 would serve the public interest in monitoring government actions and practices. As noted above, the trial record does not reflect redaction of names and addresses of FOIA

requesters has impeded plaintiff's ability to monitor the Department's actions and practices. Moreover, monitoring a government body's actions without evidence of any wrongdoing by it serves little public interest as government bodies are presumed to act lawfully. See *CBS, Inc. v. Partee*, 198 Ill. App. 3d 936, 948 (1990). Public interest based upon a requester's allegation of improper conduct is "insubstantial" unless there is at least some evidentiary support that the public body has acted improperly. See *Davis v. United States Department of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992). We recognize that evidence of wrongdoing is not a prerequisite to establishing the public's interest in disclosure. However, in the instant case we cannot conclude, without evidence of improper conduct by the Department and without evidence that redaction of names and addresses impeded plaintiff's ability to monitor the Department's conduct, that the public's interest weighs in favor of disclosure.

The third factor of the balancing test requires us to examine "the degree of invasion of personal privacy." The United States Supreme Court has noted that individuals generally have some privacy interest in their names and addresses and that "[it is] reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions." *United States Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 501, 127 L. Ed. 2d 325, 338, 114 S. Ct. 1006, 1015 (1994). Assessing the degree of invasion of personal privacy requires review of the context in which the subject names and addresses appear and what disclosure reveals about the individual. See *Gibson*, 289 Ill. App. 3d at 21; *Chicago Journeymen*, 327 Ill. App. 3d at 198-99.

In *Gibson*, the FOIA requesters, the Chicago Tribune and one of its reporters, requested names and addresses of students who had received scholarships sponsored by the legislature. *Gibson*, 289 Ill. App. 3d at 14-15. Relying on *Lieber*, the court in *Gibson* held that although names and addresses in and of themselves were not confidential or private, they were exempt from disclosure in the context of the case before it because they were linked to the receipt of a scholarship, which was intensely "confidential" and "private." *Gibson*, 289 Ill. App. 3d at 21. In *Chicago Journeymen*, by contrast, the FOIA requester sought names and addresses of all plumbers and apprentice plumbers who had been licensed by the Illinois Department of Public Health. *Chicago Journeymen*, 327 Ill. App. 3d at 193. The reviewing court determined disclosure in this instance was warranted, reasoning that "[u]nlike *Gibson*, there is no category at play here which would cause confidential or private information to be released." *Chicago Journeymen*, 327 Ill. App. 3d at 199.

In the instant case, the requesters' names and addresses are linked to a request for information from the Department. In light of this circumstance, we are mindful of the reasonable observation by defendants in their brief that "[p]rivate citizens who request information from the Department, particularly information about a certain case, crime, victim or complainant, may very well wish to keep any association they have with the subject of their request confidential. The stigma of crime and shame of being a victim are obvious and substantial. Even witnesses who make inquiries regarding crimes they observed may be reticent to have their name associated with that incident in the public domain."

Plaintiff contends that FOIA requesters cannot have any expectation of privacy given that other law enforcement agencies in Illinois do not redact names and addresses of FOIA requesters. We note, however, that privacy interests of FOIA requesters whose names have been redacted from documents sought by a subsequent FOIA requester must be reviewed on a case-by-case basis in light of all four *Lieber* factors. See *Chicago Tribune*, 332 Ill. App. 3d at 65. Thus, the degree of invasion of personal privacy as to a FOIA requester's name and address will be contingent, not upon decisions made by other agencies in Illinois (based on the unique facts and circumstances confronting them), but rather upon the facts and circumstances confronting the specific agency to whom the requester has given his name and address in the course of making a request. The context in which the subject names and addresses appear and what disclosure reveals about the individual is to be considered in assessing the degree of invasion of personal privacy. See *Gibson*, 289 Ill. App. 3d at 21; *Chicago Journeymen*, 327 Ill. App. 3d at 198-99.

In analyzing the third *Lieber* factor, the degree of invasion of personal privacy at issue in the instant case, we find *Lakin* instructive. In *Lakin*, the reviewing court upheld the FTC's refusal to release the names and addresses of individuals who had filed consumer complaints, recognizing that such "personal identifying information is regularly exempt from disclosure. And that is as it should be, for the core purpose of the FOIA is to expose what the government is doing, not what its private citizens are up to." *Lakin*, 352 F.3d at 1124. In the instant case, compelling disclosure of names and addresses would not further the core purpose of the FOIA. See *Lakin*, 352 F.3d at 1124. Personal privacy interests do not disappear when an individual provides identifying information about himself upon exercising the right to request information from a governmental agency under the Act. See *Lakin*, 352 F.3d at 1124-25 (noting that consumers who make complaints to Federal Trade Commission (FTC) do not waive their

privacy rights even though FTC's website cautions that the information may be subject to release under FOIA).

In the factual context of the instant case, we find that disclosure of the names and addresses of individuals requesting information under FOIA from the Chicago police department would constitute an invasion of personal privacy to a degree that outweighs the public interest in disclosure. The personal privacy interest of the FOIA requester is not *de minimis*, and personal privacy interests do not disappear when an individual provides information about himself in exercising the right under FOIA to request information from a governmental agency. See *Lakin*, 352 F.3d at 1124-25. The purpose of the Act is to disclose information that relates to the affairs of government including the public duties of public employees and public officials. 5 ILCS 140/1 (West 2000); *Lieber*, 176 Ill. 2d at 407. The Act was not designed to provide information about private individuals seeking access to information regarding the affairs of government. As previously noted, "the core purpose of the FOIA is to expose what the government is doing, not what its private citizens are up to." *Lakin*, 352 F.3d at 1124. While we recognize there could be a case in which the public's interest in the name and address of a FOIA requester outweighed the requester's privacy interest, this is not such a case.

The fourth and final *Lieber* factor is whether plaintiff can obtain names and addresses of FOIA requesters through an alternative means. We recognize that other than advertising, there are few avenues available to plaintiff to obtain this information. Plaintiff's interest in directly contacting FOIA requesters and its relative inability to obtain names and addresses through alternative means do not tip the scale in favor of disclosure given the minimal public interest in disclosure and the individual privacy interests involved.

The four *Lieber* factors weigh in favor of redacting FOIA requesters' names and addresses from FOIA requests, responses, and denial notices maintained in the denial file. FOIA requesters, particularly those who are crime victims, witnesses, or individuals interested in crime prevention, have a privacy interest in keeping confidential their names and addresses and keeping confidential the fact they have made a FOIA request to the Department. Disclosing to the public their names and addresses from the FOIA requests, responses or denial file undermines that interest. The trial record does not reflect that exempting the names and addresses of FOIA requesters from the Department's responses precluded plaintiff from pursuing its alleged interests in monitoring the Department's handling of FOIA requests. On balance, the evidence related to the *Lieber* factors establishes that the requesters' interest in privacy regarding names and addresses outweighs the public's interest in disclosure.

■ For the reasons previously discussed, we conclude disclosure of names and addresses of FOIA requesters as they appeared in FOIA requests and responses sought under section 3(a) in count III and in the FOIA denial file sought under section 9(b) in count I would constitute a clearly unwarranted invasion of personal privacy. We note that this conclusion is based upon application of the *Lieber* factors to the specific facts and circumstances of the case before us and does not establish a *per se* rule that FOIA requesters' names and addresses are categorically exempt from disclosure. Accordingly, based upon the previous discussion, we find the trial court, in the factual context of this case, properly redacted the names and addresses of persons who made requests under the Act, as these names and addresses appear in: (a) FOIA requests; (b) FOIA response letters to FOIA requests; and (c) the FOIA denial file.

### C. Denial File Satisfies Section 9(b) Indexing Requirements

■ Regarding count I, we next address whether the court's determination that the Department's denial file satisfied section 9(b)'s indexing requirements was against the manifest weight of the evidence. Plaintiff contends even if disclosure of the redacted information would constitute a clearly unwarranted invasion of privacy, judgment in defendants' favor on count I must be reversed because defendants failed to maintain denial notices issued before initiation of this lawsuit and indexed denials only by type of exemption claimed, not also by the types of records requested in each denied FOIA request. As previously noted, section 9(b) requires copies of denial notices to be "indexed according to the type of exemption asserted and, to the extent feasible, according to the types of records requested." 5 ILCS 140/9(b) (West 2000).

At trial, the evidence established the Department had not indexed the denial file by type of records requested because it was not yet feasible. Hickey, assistant director of records, stated he planned to have the file indexed in this manner in the future. He explained for the time being the file would remain indexed only by type of exemption asserted due to lack of resources for further indexing. FOIA officer Means stated she was the only person indexing and it would be feasible to physically index by major category. She did not, however, state that it would be feasible to index by the specific types of records requested, but stated with help she would "probably" be able to index by more categories. The testimony of Hickey and Means does not demonstrate the Department presently had funding to hire someone to help index. Mindful of section 9(b)'s requirement of indexing "to the extent feasible," based on the record, we find the court's refusal to

grant *mandamus* requiring the Department to further index the denial file by types of records requested was not against the manifest weight of the evidence.

### D. Absence of Denials Does Not Warrant Writ of *Mandamus*

■ Plaintiff additionally contends that the trial court's refusal to issue a writ of *mandamus* was in error because the denial file did not contain all denials issued before 2000. Plaintiff correctly notes in its brief that the Act became effective in 1984 and that the Department's obligation to maintain a denial file began at that time. Defendants acknowledge that the denial file is complete only for denials issued beginning in 2000 and concede that the Department should have kept all denial notices issued prior to 2000. Defendants argue, however, that a writ of *mandamus* is inappropriate because the evidence at trial established the Department did not have possession of the denials in question and therefore could not have supplemented the denial file with them. We agree.

A writ of *mandamus* compelling the undertaking of an impossible act will not be issued. *People ex rel. Maro v. Board of Auditors, Rock Island Township*, 48 Ill. 2d 202, 204 (1971); *Curtis v. Little*, 117 Ill. App. 3d 714, 717 (1983). Hickey's testimony reflects the denial file contains all denials issued beginning in the year 2000, contains only some denials for the years 1998 and 1999, and contains no denials before 1998. Hickey stated on cross-examination that he was unaware of any "book of denials" containing denials issued before 1998. The record fails to reflect any evidence presented at trial which indicates the Department was capable of producing denials issued before the year 2000 other than those already in the file for 1998 and 1999. We find no error in the trial court's refusal to order production of all denials since 1984. See *People ex rel. Maro*, 48 Ill. 2d at 204 (*mandamus* compelling impossible act will not be issued). For the reasons previously discussed, the court's denial of *mandamus* on count I and denial of injunction on count III are affirmed.

## III. COUNT II

■ Pursuant to section 5 of the Act, count II sought a writ of *mandamus* requiring the Department to prepare, maintain and make available to the public a current list describing in reasonable detail all types or categories of records under its control. In support of its claim, plaintiff attached to its complaint the document provided by the Department in response to its initial request under section 5. That document listed divisions of the Department and duties assigned. The purpose of section 5 is to aid persons in obtaining documents from the Department under the Act. Section 5 of the Act states in relevant part:

"[E]ach public body shall maintain and make available for inspection and copying a reasonably current list of all types or categories of records under its control. The list shall be reasonably detailed in order to aid persons in obtaining access to public records pursuant to this Act. Each public body shall furnish upon request a description of the manner in which public records stored by means of electronic data process may be obtained in a form comprehensible to persons lacking knowledge of computer language or printout format." 5 ILCS 140/5 (West 2000).

The court denied the parties' motions for summary judgment on count II, explaining that questions of fact existed as to whether the Department properly maintained a section 5 list. The court stated "defendants will be given the opportunity to comply with [section 5] because they are obliged to follow the statutory requirements." Shortly before trial, defendants provided the court with a revised section 5 list. The court, after trial, found "the [City] has now presented a list of 'all types or categories of records under its control' and it substantially meets the requirements of Section 5 of the [Act]."

Plaintiff argues that we may not consider the revised list because it was not admitted into evidence at trial and has filed a motion in this court to strike that list from the appendix to defendants' brief. Defendants filed a motion to strike plaintiff's motion. Both motions to strike were taken with the case. Plaintiff identifies the section 5 list that was attached to its complaint and was the subject of defendants' summary judgment motion as the only list in evidence and contends this list is insufficient.

Defendants acknowledge the revised list was not admitted into evidence at trial and do not dispute the original list failed to comply with section 5. Defendants, however, contend the doctrine of judicial estoppel precludes plaintiff from now arguing the revised list may not be considered. Application of the doctrine of judicial estoppel, which is within the court's discretion, provides that "a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding." *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996). "The five elements necessary for the application of judicial estoppel include the following: 'the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it.' " *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 460 (2003), quoting *People v. Caballero*, 206 Ill. 2d 65, 80 (2002).

■ Here, we find the facts satisfy the above elements and conclude plaintiff is judicially estopped from claiming the revised section 5 list provided to the court before trial may not be considered. At trial, plaintiff's counsel noted in closing argument that no evidence was presented to the trial court indicating the Department intended to implement the revised section 5 list. Following trial, plaintiff filed a motion for an award of attorney fees and expenses and, in a memorandum supporting that motion, asserted "[t]hrough this litigation, [plaintiff] obtained compliance with Section[ ] 5 *** of FOIA." Plaintiff further stated "[c]learly this litigation was responsible for the production of a new, more detailed list." In its reply in support of its motion for fees, plaintiff conceded the Department stopped using the old section 5 list shortly before trial, noting: "The defendants through a summary judgment motion, unsuccessfully sought a ruling that the list conformed to section 5. The Court held otherwise. The [Department] nevertheless continued to use that document as its section 5 list until the eve of trial. Then it generated a new list, accepted by the Court on December 11, 2000."

Plaintiff made these factual assertions to support its contention it was entitled to attorney fees, intended the trial court to accept the truth of these assertions, and by receiving fees, benefitted from the trial court's acceptance of these assertions. Plaintiff now asserts in this appeal, a proceeding separate from that conducted by the trial court, that this court may not consider the revised section 5 list because there "isn't any evidence that [it] has been or ever will be used." Plaintiff's assertion is contradicted by the record and directly contradicts the factual assertions it made in the trial court in support of its motion for fees including the previously noted assertion that "[t]hrough this litigation, [plaintiff] obtained compliance with Section[ ] 5 *** of FOIA." We conclude plaintiff is judicially estopped from now asserting that the Department has not complied with section 5. The trial court's denial of a writ of *mandamus* on count II based on its finding that the Department's revised list substantially satisfies section 5 of the Act is affirmed.

## IV. CROSS-APPEAL

■ An award of attorney fees under the Act will not be disturbed absent an abuse of discretion. *Lieber v. Board of Trustees of Southern Illinois University*, 316 Ill. App. 3d 266, 269 (2000). Defendants contend on cross-appeal the award of attorneys fees must be reduced and the award of costs must be reversed. Section 11(i) of the Act states:

"If a person seeking the right to inspect or receive a copy of a

public record substantially prevails in a proceeding under this Section, the court may award such person reasonable attorneys' fees if the court finds the record or records in question were of clearly significant interest to the general public and that the public body lacked any reasonable basis in law for withholding the record." 5 ILCS 140/11(i) (West 2000).

The court originally denied plaintiff's request for attorney fees and costs. Plaintiff filed a motion for reconsideration contending that it had prevailed on most of its claims and was entitled to attorney fees and costs. Plaintiffs sought $93,063 in attorney fees and $3,334.41 in "out of pocket expenses." The court conducted a hearing on plaintiff's motion and ruled as follows:

"This court finds that not only is [plaintiff] eligible for the fees, but [plaintiff] has also proven it's entitled to fees by demonstrating the records at issue in this cause of action were of significant interest to the general public, and the Chicago Police Department lacked reasonable grounds for withholding some of the records in question. Though this Court finds [plaintiff] is entitled to fees, this Court finds in its discretion [plaintiff] is only entitled to half of the fees requested. This court finds the litigation of this cause of action could have been resolved in a shorter period of time and in a less expensive manner. Therefore, based on the foregoing, this Court grants [plaintiff's] motion for an award of attorneys' fees and expenses pursuant to Section 11(i) of the [Act] in the amount of $48,198.70."

After this oral ruling, the court entered a written order, dated March 30, 2001, which stated plaintiff "is awarded $48,198.70 in fees and expenses." The court indicated that the Department "lacked reasonable grounds for withholding some of the records in question." Defendants contend they had a reasonable basis under section 11(i) of the Act for withholding the district plans for 1996 and 1997 and General Order 97—6 and dispute only those fees incurred for legal services rendered to obtain those documents. Defendants estimate plaintiff incurred $2,366 in attorney fees to obtain these documents and ask us to find plaintiff is not entitled to attorney fees for its efforts to obtain those documents. Defendants further request we remand to the circuit court for a determination of the amount by which the fee award should be reduced.

We have reviewed the district plans, General Order 97—6, and statutory exemptions that defendants contend gave them a reasonable basis in law for withholding these documents. We note the trial court reduced the amount of fees sought by plaintiff and specifically recognized the Department lacked reasonable grounds for withholding only some documents. The record does not reflect the court failed to

consider district plans and General Order 97—6 in reaching its conclusion as to the proper amount awarded plaintiff.

Defendants additionally challenge the court's award of expenses. Defendants contend $1,667.20 of the court's award was for expenses incurred by plaintiff, expenses are not recoverable under the Act, and the award must be reduced by $1,667.20. Plaintiff sought $93,063 in attorney fees and $3,334.41 in "out of pocket expenses." Defendants observe although the court ruled it was awarding plaintiff one half of the fees requested, it awarded plaintiff one half of requested attorney fees plus one half of expenses. Defendants note one half of $93,063 in attorney fees requested by plaintiff is $46,531.50, one half of $3,334.41 in expenses requested by plaintiff is approximately $1,667.20, and the sum of these two halves equals $48,198.70, the amount awarded by the trial court. Based on our review of the record, we find no abuse of discretion in the total amount awarded. The amount awarded was reasonable, consistent with the previously noted provisions of section 11(i) and supported by the record.

## V. CONCLUSION

We affirm the summary judgment on count IV, affirm judgment entered following trial on counts I, II, and III, affirm the fees award entered by the court, and deny motions to strike.

Judgment affirmed.

O'BRIEN and GALLAGHER, JJ., concur.