FOURTH DIVISION
JUNE 29, 2006

No. 1-04-3175

| | | |
|---|---|---|
| CLAYBORN L. SMITH, JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH BOUDREAU, Chicago police detective, | ) | |
| JOHN HALLORAN, Chicago police detective, | ) | |
| JAMES O'BRIEN, Chicago police detective, | ) | |
| WILLIAM FOLEY, Chicago police detective, | ) | |
| and the CITY OF CHICAGO, | ) | Honorable |
| | ) | Kathy M. Flanagan, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Clayborn Smith, appeals from an order of the circuit court of Cook County dismissing his amended complaint against defendants, Chicago police detectives Kenneth Boudreau, John Halloran, James O'Brien, and William Foley and the City of Chicago (collectively, defendants or City), for alleged state and federal violations of civil rights.  On appeal, plaintiff contends that:  (1) his state-law claims alleging police torture are not barred by the statute of limitations; (2) his federal section 1983 (42 U.S.C. § 1983 (2000)) claims are not barred by the statute of limitations; (3) the City is collaterally estopped from taking the position that his claims are untimely; and (4) his claims are timely under the doctrine of equitable tolling.  For the reasons stated herein, we affirm the judgment of the trial court.

BACKGROUND

## I. CHRONOLOGY

The record reveals the following chronology of events:

OCTOBER 17, 1992:  Miller Tims and Ruby Bivens were found dead, having been severely beaten, doused with gasoline, and set on fire.

OCTOBER 20, 1992:  Smith was arrested for the murder of his great-aunt, Bivens, and his grandfather, Tims.

OCTOBER 21, 1992:  Smith signs a confession to the murders of Bivens and Tims.

MARCH 29, 1994:  The trial court, Judge Strayhorn, denies Smith's motion to suppress his confession.

APRIL 8, 1994:  Smith files a section1983 complaint in United States District Court for the Northern District of Illinois.

MAY 20, 1994:  Following a bench trial before Judge Strayhorn, Smith is convicted of the murders of Bivens and Tims.

JULY 21, 1995:  Judge Duff dismisses Smith's suit in the district court.

AUGUST 22, 1995:  Judge Duff issues an order clarifying the dismissal.

OCTOBER 31, 1995:  Smith dismisses his appeal of Judge Duff's ruling in the Seventh Circuit on his own motion.

NOVEMBER 8, 1995:  Smith files a second section 1983 lawsuit in the district court.

NOVEMBER 29, 1995:  The district court dismisses the second suit with prejudice.

OCTOBER 28, 1996:  The First District Appellate Court affirms Smith's conviction.

DECEMBER 3, 1997:  The Illinois Supreme Court denies Smith's petition for leave to appeal.

MAY 18, 1998:  The United States Supreme Court denies *writ of certiorari*.

MARCH 24, 2000:  Smith files a *pro se* petition for a writ of *habeas corpus* in the district court alleging constitutional challenges to his conviction.

JULY 1, 2002:  The district court, Judge Bucklo presiding, rules that even if Smith's allegation that his confession was coerced was true, the error of admitting the confession was harmless because the evidence of Smith's guilt adduced at trial was overwhelming

JANUARY 28, 2003:  Judge Bucklo denies Smith *habeas* relief.

JULY 16, 2003:  Smith files a *pro se* complaint against defendants Boudreau, Halloran, O'Brien and Foley for violations of state and federal law in the circuit court of Cook County; he later obtains counsel and files an amended complaint.

MAY 3, 2004: The City moves to dismiss Smith's complaint based on expiration of the statue of limitations and collateral estoppel.

SEPTEMBER 15, 2004:  The circuit court dismisses Smith's complaint.

OCTOBER 13, 2004:  Smith files a notice of appeal.

## II. FACTS

The following facts are relevant to this appeal. On October 20, 1992, Smith was arrested in his apartment at the Robert Taylor Homes and transported to Area One police headquarters for questioning in connection with the murders of his grandfather, Miller Tims, age 66, and his great-aunt, Ruby Bivens, also age 66.  The record revealed that Smith beat Bivens and Tims with household instruments about the head and body and, in addition, beat an elderly uncle who was mentally disabled and a double amputee, and then poured gasoline on  his relatives and set them on fire in their own home.

Prior to trial, Smith moved to suppress his confession.  On March 14, 1994, the trial court commenced a hearing on Smith's motion to suppress.  Smith, defendant Boudreau and other

witnesses testified regarding what occurred during defendants' interrogation of plaintiff in October 1992.  On March 29, 1994, the trial court, Judge Earl Strayhorn presiding, denied Smith's motion to suppress, concluding that his confession was given voluntarily.

On April 8, 1994, Smith filed a lawsuit pursuant to 42 U.S.C. § 1983 (2000) in the United States District Court for the Northern District of Illinois (District Court) seeking redress for alleged violations of his constitutional rights by use of excessive force to coerce a confession during his 1992 interrogation.  In his complaint, Smith alleged that Detectives Boudreau, Halloran and Foley, and other defendants not a party to this lawsuit, used excessive force, beating and striking him during the course of his interrogation, and coerced him into confessing to the murders.

On May 20, 1994, following a bench trial, Smith was convicted of the murders of Tims and Bivens.  Judge Strayhorn sentenced Smith to natural life imprisonment without the possibility of parole.

On July 21, 1995, the District Court, the Honorable Brian Barnett Duff presiding, dismissed Smith's federal law suit without prejudice.  On August 22, 1995, Judge Duff issued an order clarifying the prior dismissal order, and ordering that judgment be entered for the City of Chicago.  Judge Duff explained that the claims Smith raised in the District Court were "inextricably intertwined" with the legality of his conviction, which Smith was in the process of appealing to the Illinois Supreme Court.  The District Court based its decision on the case Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 1145 S. Ct. 2364 (1994).  Smith appealed the decision of the District Court to the Seventh Circuit Court of Appeals (Seventh Circuit), but dismissed the appeal on his own motion on October 31, 1995.

On November 8, 1995, Smith filed a second section 1983 lawsuit in the federal District Court against Detective Foley and another officer, Detective Moran[1], alleging that Detectives Foley and Moran falsified lock-up records to show that Smith participated in two lineups when he had participated in only one lineup. Smith v. Foley, No. 95 CV 6494 (N.D. Ill. November 29, 1995). On November 29, 1995, the District Court, Judge Marovich presiding, denied Smith's motion to proceed *in forma pauperis* and dismissed Smith's complaint without prejudice on the grounds that it was untimely and that it failed to state a valid legal claim.

Smith's conviction was affirmed on appeal to this court (People v. Smith, 287 Ill. App. 3d 1116, 710 N.E.2d 571 (1996) (unpublished order under Supreme Court Rule 23), and his petition for leave to appeal denied by the Illinois Supreme Court. People v. Smith, 175 Ill. 2d 550, 689 N.E.2d 1145 (1997). The United States Supreme Court denied plaintiff's petition for *writ of certiorari* on May 18, 1998.

On March 24, 2000, Smith filed a *pro se* petition for a writ of *habeas corpus* in the District Court alleging various constitutional challenges to his conviction. On July 1, 2002, the District Court, Judge Bucklo presiding, found, *inter alia*, that even if Smith's allegation that his confession was coerced was true, the error of admitting the confession was harmless because the evidence of Smith's guilt adduced at trial was overwhelming. United States *ex rel*. Smith v. Walls, 208 F. Supp. 2d 884, 888-89 (N.D. Ill. 2002). On January 28, 2003, Judge Bucklo

---

[1]Detective Moran is not a named defendant in the present case.

denied the Smith *habeas* relief.  United States *ex rel*. Smith v. Walls, No 00 C 1814 (N.D. Ill. January 28, 2003).

On July 16, 2003, Smith filed a *pro se* complaint in the circuit court of Cook County against defendants Boudreau, Halloran, O'Brien and Foley, for violations of state and federal law.  Smith later obtained counsel and filed an amended complaint.  Smith's amended complaint, the complaint at issue here, alleged six counts against defendants as follows:  (1) excessive force under section 1983; (2) state-law assault and battery; (3) state-law intentional infliction of emotional distress; (4) failure to intervene under section 1983; (5) conspiracy to use excessive force under section 1983; and (6) state-law civil conspiracy.  The City moved to dismiss Smith's complaint on the grounds that it was untimely because Smith failed to refile his section 1983 claims within two years of the conclusion of his state-court criminal appeals on December 3, 1997.  The City argued that Smith's claims were barred by the statute of limitations and he was collaterally estopped from rasing these claims.

The trial court granted the City's motion and dismissed Smith's complaint in its entirety.  The trial court concluded that Smith's state-law claims were untimely under Illinois's one-year statute of limitations for claims against a municipality and that those claims were barred when Smith filed his first lawsuit in federal court in 1994.  Regarding Smith's section 1983 claims, the trial court concluded that those claims were untimely as well, under the holding in Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2354 (1994).  In Heck, the Supreme Court held:

> "[W]hen a state prisoner seeks damages in a section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487, 129 L. Ed. 2d at 394, 114 S. Ct. at 2372..

The trial court held that under Heck, Smith's claims of excessive force did not necessarily undermine the validity of his conviction and, therefore, Smith's claim began to accrue as soon as the alleged use of excessive force occurred. The trial court further found that Smith was collaterally estopped from bringing excessive force claims for the following reason: during the trial of Smith's criminal case, Judge Strayhorn denied Smith's motion to suppress his confession as voluntary, thereby precluding a claim that detectives used excessive force during his interrogation. Smith's timely appeal followed.

OPINION

Initially, Smith contends that the lawsuit he filed in 2003 was timely filed and that the trial court erred in dismissing his complaint on the City's motion filed pursuant to section 2-619 of the Code of Civil Procedure. Our review is *de novo*. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).

Smith's argument is complex and circuitous. Smith believes that his complaint for excessive force, allegedly committed October 22, 1992, filed in 2003, is timely. Smith argues that in 1995, when Judge Duff ruled that Smith's claim was premature, Smith was bound by Judge Duff's interpretation of Heck as necessitating a final resolution of his appeal. Smith claims he received this resolution in 2002, when Judge Bucklo ruled that any error in admission of his confession was harmless.

The City responds that Smith's state claims are untimely. The City argues that under section 8-101 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8-101 (West 2004)), the statute of limitations for all tort claims against a municipality or its employees is one year. The City further responds that Smith's section 1983 claims were untimely when filed in 2003, as the statute of limitation is two years. 735 ILCS 5/13-202 (West 2004). The City argues that plaintiff's claims of excessive force were immediately actionable upon the time of the alleged offense, and therefore were untimely filed in 2003.

The crux of the parties' arguments revolves around varying interpretations among the federal circuit courts regarding the meaning of the holding of Heck v. Humphrey and subsequent contradictory cases interpreting Heck.

Heck involved the section 1983 claim of a prisoner convicted of voluntary manslaughter for killing his wife. While his appeal was pending, Heck filed a *pro se* lawsuit in the District Court against prosecutors and a police investigator alleging an "'unlawful, unreasonable, and arbitrary investigation,'" leading to his arrest, and that the defendants "'knowingly destroyed'" exculpatory evidence. Heck sought compensatory and punitive money damages and did not ask for injunctive relief or release from custody. Heck, 512 U.S. at 479, 129 L. Ed. 2d at 389, 114 S. Ct. at 2368. The District Court dismissed Heck's action without prejudice. Subsequently, the Indiana Supreme Court upheld Heck's conviction and sentence, and his two petitions for federal *habeas* relief were rejected. The Seventh Circuit affirmed the dismissal of Heck's section 1983 complaint on the following grounds: If the plaintiff in a federal civil rights action is challenging the legality of his conviction, so that his victory would require his release even if he had not sought that relief, the suit must be classified as a *habeas corpus* action and dismissed if the plaintiff has failed to exhaust his state remedies.

On appeal, the United States Supreme Court affirmed the dismissal. The Court held:

"[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." (Emphasis in original). Heck, 512 U.S. at 486-87, 129 L. Ed. 2d at 394, 114 S. Ct. at 2372-73.

In the present case, plaintiff brought his section 1983 claim in federal court in 1994. The City moved to dismiss, arguing that plaintiff's complaint was premature under Heck. Judge Duff agreed and in 1995 dismissed plaintiff's claim, finding that plaintiff's state-court appeal must be disposed of prior to determining the validity of plaintiff's federal claim. Plaintiff appealed this ruling to the Seventh Circuit, but dismissed his appeal on his own motion, never to refile the appeal.

Plaintiff now argues that Judge Duff's ruling was correct and remained the "law of the case" until July 2002, when Judge Bucklo "lifted the Heck bar" by finding that even if the confession was coerced, it was harmless error. Plaintiff argues that Judge Bucklo's ruling in July 2002 made his federal section1983 claims "viable" under Heck for the first time, since his allegations of excessive force were "inextricably intertwined" with his underlying conviction.

In support, plaintiff initially cites Gauger v. Hendle, 349 F.3d 354 (7th Cir. 2003). There, Gauger sued three detectives under section 1983, alleging false arrest and that they perjured themselves at Gauger's trial for murdering his parents. The District Court granted summary judgment for the detectives and Gauger appealed. The Seventh Circuit Court of Appeals, Judge Posner presiding, held that Gauger's false arrest claim did not accrue until Gauger's state conviction was reversed. Judge Posner reasoned as follows:

> "A constitutional claim that if vindicated would undermine
> a state conviction cannot be filed until the conviction is nullified,
> even if the claimant is not seeking to get the conviction set aside."
> Gauger, 349 F.3d at 360, citing Heck v. Humphrey, 512 U.S. 477,
> 486-87, 129 L. Ed. 2d 383, 394, 114 S. Ct. 2364, 2372-73 (1994).

Plaintiff argues by analogy that his challenge to the use of excessive force would "necessarily imply the invalidity of the conviction and is thus barred by Heck."  Plaintiff buttresses his argument by a reference to footnote seven in the Heck opinion, which plaintiff contends provides that a finding of harmless error is an exception to immediate accrual of a claim. Footnote seven provides as follows:

> "For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, see Murray v. United States, 487 U.S. 533, 539 (1988), and especially harmless error, see Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991), such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.  In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual compensable injury ***."
> (Emphasis in original).  Heck, 512 U.S. at 487 n. 7, 129 L. Ed. 2d at 394 n.7, 114 S. Ct. at 2372 n. 7.

The City responds that plaintiff's claim arises out of his 1992 interrogation and was therefore immediately actionable even if the State never sought to use any of the disputed statements at trial.  Gonzalez v. Entress, 133 F.3d 551, 555 (7th Cir. 998); Buckley v.

Fitzsimmons, 20 F.3d 789, 796 (7th Cir.1994). The statute of limitations therefore expired in 1994. When plaintiff did not pursue an appeal from Judge Duff's ruling, Smith's claim expired.

The City initially distinguishes Gauger, noting first that Gauger's allegations were for false arrest and could have been brought immediately under different factual circumstances:

> "But Booker [(Booker v. Ward, 94 F.3d 1052 (7th Cir 1996))] holds that since a false arrest is not a defense to criminal charges, e.g., Corpus v. City of Edgerton, 151 F.3d 646, 648-49 (7th Cir. 1998), determining that an arrest violated the Fourth Amendment does not undermine the defendant's conviction and therefore the claim arises, and the statute of limitations begins to run, when the arrest is made." Gauger, 349 F.3d at 360-61.

Second, the City observes that Gauger's conviction rested entirely on incriminating statements Gauger made to police following his arrest. As Judge Posner continued:

> "For Gauger to mount an attack based on 42 U.S.C. 1983 on his arrest was implicitly to challenge the legality of his conviction, which rested crucially on the statements that he made to the police when he was questioned after being arrested." Gauger, 349 F.3d at 361.

By contrast, here, the City argues, there was sufficient evidence of plaintiff's guilt, other than plaintiff's confession, to support his conviction.

In any event, the City provided supplemental authority revealing that Gauger has been explicitly overruled by Wallace v. City of Chicago, 440 F.3d 421 (7th Cir. 2006). The facts of Wallace are as follows: Wallace was arrested for murder at age 15, but he told the police he was

17. Prior to trial, Wallace filed several motions to suppress his inculpatory statements made to police on the grounds that his arrest was made without probable cause and the statements were coerced in violation of Miranda . Wallace's motions were denied and he was convicted of first degree murder afer a bench trial. On appeal, this court reversed and remanded the case for a hearing to determine whether his statements were sufficiently attenuated from his unlawful arrest to permit their use. People v. Wallace, 299 Ill. App. 3d 9, 701 N.E.2d 87 (1998). On remand, the trial court found that Wallace's confession was sufficiently attenuated and affirmed his conviction. Wallace appealed again and this court reversed and remanded for a new trial. On April 10, 2002, the State filed a *nolle prosequi* motion and dropped the case. Wallace, 440 F.3d at 424.

On April 2, 2003, Wallace filed a federal suit, asserting that his fourth amendment rights had been violated and raising state-law claims for false imprisonment and malicious prosecution. The police officer defendants filed an answer and a motion for summary judgment and the City filed a motion to dismiss. Wallace filed a response arguing that the statute of limitations did not begin to run until his conviction was invalidated. Wallace, 440 F.3d at 424.

On March 30, 2004, the District Court granted summary judgment in favor of the police officers and denied the City's motion to dismiss. On October 29, 2004, the District Court concluded that Wallace's false arrest claim was time-barred, because he could have brought the claim on September 21, 1998, after the Illinois Appellate Court found that Wallace was arrested without probable cause, and that Wallace conceded as much. Wallace, 440 F.3d at 424.

The Seventh Circuit reviewed the federal and state law governing the question of the accrual of constitutional torts and the three approaches that could be taken to the accrual of fourth amendment claims:

"(1) the Fourth Amendment claim arises at the time of the wrong (*i.e.*, the false arrest, the unlawful search); (2) the Fourth Amendment claim accrues only after the underlying conviction definitively has been set aside; or (3) as Gauger suggested, accrual depends on how central the evidence was to the conviction: if it was non-essential, use rule 1; if it was critical, use rule 2."

Wallace, 440 F.3d at 425.

The Seventh Circuit reviewed the underlying law on accrual, noting that the idea that the claim accrues at the time of the injury "runs into some tension with" Heck:

"In Heck, the Court held that a constitutional claim that would undermine a criminal conviction if vindicated cannot be brought until the defendant's conviction is nullified. [Citation]. This general rule, which works perfectly well for complaints like the ones about the knowing destruction of evidence and illegal identification procedure raised in Heck, has caused some courts-- including this one in Gauger--to conclude that certain Fourth Amendment claims also do not accrue until after the defendant's conviction has been invalidated [Citations].

　　　　* * *

[Citation.] Footnote seven in Heck anticipates at least some Fourth Amendment cases. It suggests that despite the general rule of Heck, a suit for damages arising from an unreasonable search could go forward as a § 1983 claim without invalidating a criminal

prosecution, because of the independent source or inevitable discovery doctrines. In Gonzalez, we saw two implications in the footnote: '(I) a claim based on an unlawful search or arrest may be brought immediately, because a violation of the fourth amendment does not necessarily impugn the validity of a conviction--the evidence may be properly admitted anyway, or it may be excluded and the defendant convicted on other evidence--and (ii) a claim of damages based on the injury of being convicted is impermissible until the conviction has been overturned.' 133 F.3d at 553."

Wallace, 440 F.3d at 425-26.

The Seventh Circuit then reviewed Booker, wherein Heck was interpreted to allow a false arrest claim to go forward before the defendant's conviction was invalidated, as distinct from Gauger, which rejected an "across-the-board" approach to fourth amendment claims in favor to a case-by-case examination under which at least some false arrest claims would not accrue until after the conviction was invalidated. In deciding between the options (1) and (2) above regarding accrual, the Seventh Circuit decided on option (1), the rule that all fourth amendment claims for false arrest and unlawful search accrue at the time of injury. The Seventh Circuit noted that this was the approach taken in Booker: "*ex ante* it is not readily apparent which criminal cases might proceed despite the consequences of the successful Fourth Amendment challenge," concluding that the Booker approach is a justifiable extension of Heck footnote seven, in light of the policies behind statutes of limitations and the need to avoid "unnecessary interference with the outcomes of criminal proceedings." Wallace, 440 F.3d at 427. The Seventh Circuit concluded:

"To the extent, therefore that <u>Gauger</u> eschews a clear rule for false arrest claims in favor of an evaluation of the evidence, we disapprove its approach and instead reaffirm our holding in <u>Booker v. Ward</u> that a '§ 1983 unlawful arrest claim . . . accrue[s] on the day of [] arrest.' Individuals and attorneys who wish to preserve a claim for false arrest or similar Fourth Amendment violations should file their civil rights action at the time of arrest." (Citations omitted). <u>Wallace</u>, 440 F.3d at 427.

<u>Wallace</u> supports the conclusion that Smith's state and federal claims accrued at the time of the alleged infractions. Footnote seven of <u>Heck</u> did not serve to suspend the filing of Smith's claims here. The record shows Smith waived his opportunity to further pursue his claims when he dismissed his appeal of Judge Duff's order.

Regarding the significance of plaintiff's dismissal of his appeal, the trial court relied on <u>Castillo v. Zuniga</u>, 01 C 616 (N.D. Ill. March 14, 2002), which relied on <u>Simpson v. Rowan</u>, 73 F.3d 134 (7th Cir. 1995). In <u>Simpson</u>, the District Court, following <u>Heck</u>, dismissed plaintiff's federal section 1983 suit for damages for alleged illegal arrest and search in its entirety while awaiting the outcome of Simpson's state-court criminal proceedings. On appeal, the Seventh Circuit held that Simpson's case should have been stayed instead of dismissed because Simpson's civil rights claims sought monetary damages-relief that is unavailable from his pending state-court proceedings. <u>Simpson</u>, 73 F.3d at 138.

In <u>Castillo</u>, the plaintiff was arrested January 20, 1989, for murder. On July 17, 1989, plaintiff filed a pro se suit in the District Court against Chicago police officer defendants and the

police department. The District Court, Judge Ann Williams presiding, dismissed the case without prejudice and with leave to reinstate after disposition of the underlying criminal case.

Plaintiff was found guilty on October 24, 1991, and sentenced to 48 years of imprisonment on December 19, 1991. Plaintiff remained incarcerated from the date of his arrest until September 22, 2000, when new evidence revealed that Castillo could not have committed the murder. On January 30, 2001, Castillo commenced an action in the District Court, alleging that defendant police officers violated his fourth amendment rights by falsely arresting and imprisoning him and using excessive force in interrogating him.

The defendants responded that the Castillo's claims were not timely filed because his claims accrued at the time of Castillo's arrest or shortly thereafter and did not depend upon the future course of state-court criminal proceedings against plaintiff. The District Court held that the 1989 dismissal of Castillo's civil case tolled the two-year statute of limitations until, at the latest, December 29, 1997, not 2001, and that Castillo failed to timely refile his case after the charges against him were dropped, in January 2001.

The trial court here reasoned that, as in Castillo, had plaintiff maintained his appeal, his claims for excessive force would have been stayed by the rule established in Simpson.

Smith responds to this argument by insisting that Simpson is "unhelpful," Judge Duff's dismissal was correct under Heck, and he had no choice but to sit around and wait for the Heck bar to be lifted. Smith cites no authority for this proposition. The trial court notes, and we agree, that Smith's argument is inaccurate, as Judge Bucklo was not reviewing Judge Duff's decision when she entered her "harmless error" ruling.

The City compares the present case to Washington v. Summerville, 127 F.3d 552 (7th Cir. 1997), cert. denied, 523 U.S. 1073, 140 L. Ed. 2d 668, 118 S. Ct. 1515 (1998), and Gonzalez

v. Entress 133 F.3d 551 (7th Cir. 1998).   In his underlying criminal case, Washington filed three successive motions to suppress his statements made upon arrest for involvement in a murder, eventually succeeding.  The State then dismissed the case  Washington subsequently asserted claims against Chicago police detectives for unlawful arrest, excessive force, and malicious prosecution under both state and federal law.  The District Court granted summary judgment for the detectives on malicious prosecution claims and dismissed Washington's remaining claims for failure to state a claim. Washington appealed.  After a lengthy discussion of the Heck "hubbub," the Washington court reasoned:

> "[T]he [Heck] Court did not explicitly address claims which, if successful, would necessarily imply the invalidity of a *potential* conviction on a pending criminal charge.  However, in Smith v. Holtz, 87 F.3d 108, 112-13 (3d Cir.), *cert. denied*, 519 U.S. 1041, 117 S. Ct. 611, 136 L. Ed. 2d 536 (1996), the Third Circuit discussed this issue ***.  In Smith, Smith alleged that the defendants suppressed exculpatory evidence and contrived inculpatory evidence, and he sought damages from his unlawful conviction and confinement.  ***  [T]he Third Circuit found that if Smith had brought his allegations before *** the Pennsylvania Supreme Court ordered that the charges against him be dismissed, success on these claims would have necessarily implied the invalidity of any future conviction on the still pending criminal charges."  Washington, 127 F.3d at 555.

The Washington court concluded:

>"[A] claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under § 1983. It necessarily follows that so long as success on such a claim would necessarily imply the invalidity of a conviction in the pending criminal prosecution, such a claim does not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist." Washington, 127 F.3d at 556.

And the court ultimately held that Washington's unlawful arrest and excessive force claims were time-barred:

>"Washington's success on either his unlawful arrest or excessive force claim would not have necessarily implied the invalidity of a potential conviction on the murder charge against him. Accordingly, the statute of limitations on Washington's claims began to run when he knew or should have known that his constitutional rights had been violated - the date of his arrest." Washington, 127 F.3d at 556.

The Gonzalez court clarified that excessive force is always a constitutional violation regardless of the proceedings in the underlying criminal case. As such, a plaintiff can recover damages for excessive force even if his or her criminal conviction is completely valid and regardless of whether it is challenged or set aside. For this reason, a plaintiff must initiate such a suit for damages within the two-year statute of limitations. See Gonzalez , 133 F.3d at 555; Washington, 127 F.3d at 556.

We hold that Smith's federal claims, even under the Judge Duff-inspired and most generous interpretation of <u>Heck</u>, expired May 18, 2000, two years after the final termination of his case, the denial of *certiorari* to the Supreme Court, on May 18, 1998.

Notwithstanding <u>Heck</u>, in the alternative, we find that Smith's claims neatly fall into the rule set forth in <u>Wallace</u>, *i.e.*, immediately actionable and accruing upon injury. Smith's ongoing attempts to resurrect time-barred claims in the same courts, adding and subtracting defendants where necessary to assert that the claims contain "new evidence," reflect improper attempts to slice up his claims into little pieces, "taking two bites at the same apple," a method held impermissible by our supreme court. See, *e.g.*, <u>Manicki v. Zeilmann</u>, 443 F.3d 922 (7th Cir. 2006), citing <u>River Park, Inc. v. City of Highland Park</u>, 184 Ill. 2d 290, 703 N.E.2d 883 (1998). Under either theory, we find the trial court properly concluded that Smith was time-barred in 2003 from recommencing his state and federal claims.

Smith alternatively argues the City is judicially estopped from arguing that this appeal comes too late. Plaintiff reasons that in 1994, the City interpreted <u>Heck</u> as prohibiting his civil rights claims until his appeal was decided. Plaintiff argues that the City's two positions are mutually exclusive and therefore the City cannot now say that his appeal should be dismissed as untimely.

Judicial estoppel provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding. <u>Chicago Alliance for Neighborhood Safety v. City of Chicago</u>, 348 Ill. App. 3d 188, 215, 808 N.E.2d 56 (2004). The five elements necessary to apply judicial estoppel are: (1) the party to be estopped must have taken two positions; (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept

the truth of the fact alleged, and (5) have succeeded in the first proceeding and received from or benefitted from it. Chicago Alliance, 348 Ill. App. 3d at 215.

The City "concedes" that its motion to dismiss plaintiff's 1994 federal claim was incorrect as it was based on an improper interpretation of Heck. However, the City argues that its error does not provide a basis for judicial estoppel because all of the parties are not the same (*i.e.*, Smith added O'Brien as a defendant in a subsequent suit), and the City's current position is not "totally inconsistent" with the position it took in 1994. The City argues that it is now properly responding to "developments in the law," regarding the interpretation of Heck. The City argues that judicial estoppel does not apply where plaintiff failed to provide attention to his case, *i.e*, failing to pursue an appeal from the order entered by Judge Duff.

The trial court found that the City is not barred by judicial estoppel. We agree. We note that Smith blows hot and cold as he now argues against his original position in the District Court opposing Judge Duff's interpretation of Heck. We will not serve Smith his proverbial cake and stand by while he consumes it. While the City was successful in its motion to dismiss before Judge Duff, that victory did not destroy Smith's ability to timely bring his section 1983 claims. Smith's failure to exhaust his own opportunity for appeal ultimately made his claim untimely, and under Castillo, the doctrine of judicial estoppel does not apply.

Smith further argues that he is not collaterally estopped from bringing his claims because there has never been a "full and fair" adjudication of his claim.

Collateral estoppel is an equitable doctrine that prevents a party from relitigating an issue that has been decided in a prior proceeding. Collateral estoppel is appropriate when: (1) the issue decided in the prior adjudication is identical to the issue presented in the present suit; (2) a final judgment was entered on the merits in the prior adjudication; and (3) the party against

whom estoppel is asserted was a party to or in privity with a party to the prior adjudication. Talarico v. Dunlap, 177 Ill. 2d 185, 191, 685 N.E.2d 325 (1997).

Smith argues that the suppression hearing prior to trial was not conclusive of his claims of excessive force because the trial court did not make a ruling as to whether he was beaten, whether any coercion was used against him, or whether his testimony was relevant. Smith argues that this evidence was not available at the time of trial. In support, Smith cites to *Chicago Tribune* newspaper articles that report that "literally dozens" of people are accusing defendants Boudreau and Halloran of misconduct "strikingly similar" to what Smith alleges in his action.

Smith further cites the cases People v. Cannon, 293 Ill. App. 3d 634, 688 N.E. 2d 693 (1997), and People v. Patterson, 192 Ill. 2d 93, 735 N.E.2d 616 (2000). In Cannon, a criminal defendant was allowed to relitigate the issue of a coerced confession after 16 other arrestees filed complaints in the Chicago Police Department Office of Professional Standards (OPS) alleging torture by police detectives. In Patterson, the defendant was allowed to relitigate the issue of a false confession in light of newly discovered evidence of "systematic" torture in the Area 2 police headquarters. Patterson, 192 Ill. 2d at 145.

The City responds that Smith is collaterally estopped from relitigating the issue of the suppression of his confession, decided by Judge Strayhorn at his criminal trial in the underlying matter. The City argues that Smith, in fact, had a "procedural, substantive, and evidentiary opportunity to be heard on the issue." Taylor v. Peoples Gas Light & Coke Co., 275 Ill. App. 3d 655, 656 N.E.2d 134 (1995).

The City distinguishes both Cannon and Patterson. In Cannon, on direct appeal, this court granted Cannon a new trial on a Batson claim. In the second trial, the trial court denied Cannon's attempt to relitigate his motion to suppress his confession on the grounds of collateral

estoppel. On appeal, this court reversed on the grounds that collateral estoppel did not apply since Cannon had new evidence bolstering his claim of excessive force. This court noted that the trial judge who denied Cannon's motion to suppress during his first trial (Judge Maloney) was subsequently convicted of accepting bribes in murder cases. Cannon, 293 Ill. App. 3d at 639.

In the present case, there is no longer any pending challenge to Smith's murder convictions. Unlike Cannon, the voluntariness of plaintiff's confession has been resolved.

Patterson is similarly distinguishable. There, the supreme court considered a petition for postconviction review. Patterson argued that he was entitled to a hearing to present new evidence to support his claim of a coerced confession. The trial court had found Patterson's confession to be voluntary and that ruling was affirmed on direct appeal; therefore, *res judicata* would apply to bar Patterson's claim barring substantial new evidence. The supreme court concluded that Patterson presented sufficient new evidence to warrant an evidentiary hearing, including a report from OPS regarding police abuse and appellate decisions finding that other defendants had been abused by the same officer whom Patterson alleged abused him, namely, Lieutenant Jon Burge. Patterson, 192 Ill. 2d at 138-40.

Here, Smith has not provided any information regarding new evidence. Smith refers only to allegations gleaned from newspaper articles about other cases *de hors* the record. The posture of the present case is distinguishable as well: here, Smith is attempting to bring a civil suit after his conviction has become final. In Patterson, the plaintiff was challenging his conviction on postconviction review. We find that Smith is collaterally estopped from relitigating this issue. Finally, Smith contends that his state-law claims are timely under the

doctrine of equitable tolling because he was prevented from timely asserting his rights by the improper ruling of Judge Duff .

The City responds that equitable tolling is appropriate if the defendant has "actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." Clay v. Kuhl, 189 Ill. 2d 603, 614, 727 N.E.2d 217 (2000). The City argues that Smith was not "prevented" from asserting his state-law claim because it was already time-barred, having expired on October 20, 1993. We agree, and find Smith's claim without merit. For the reasons stated herein, we therefore affirm the judgment of the trial court.

Affirmed.

GREIMAN, J., and MURPHY, J., concur.