ELAINE RILEY, Plaintiff-Appellant, v. RAYMOND FAIRFIELD *et al.*, Defendants-Appellees.

Third District   No. 3—86—0837

Opinion filed September 16, 1987.

Thomas E. McClure, of Elliott & McClure, of Bourbonnais, for appellant.

Charles E. Hervas and James R. Schirott, both of Schirott & Associates, P.C., of Itasca, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

The defendants, Kankakee County sheriff's police officers Raymond Fairfield and John Ruch, arrested the plaintiff, Elaine Riley, in reliance on a Du Page County arrest warrant. The plaintiff brought the instant suit for Federal statutory and Illinois common law damages based on her arrest and subsequent imprisonment. She brings this appeal from the court's order of summary judgment for the officers.

At approximately 10 p.m. on December 13, 1985, the officers stopped the plaintiff's vehicle, as one headlight was not lit. In a routine computer check of the plaintiff's driver's license, Officer Ruch was informed that the license was valid but that a Du Page County arrest warrant had been issued for a person with the plaintiff's name and birth date but a different address.

According to the documents on file, Ruch returned to the plaintiff's vehicle to make some inquiries. The plaintiff informed Ruch that she did not know where Du Page County was located and that she had never been charged with a crime. Ruch returned to his car. In further radio communication he was informed that, like the plaintiff, the warrant subject was a black woman. However, the warrant subject's description was approximately two inches taller and 20 to 30 pounds heavier than the plaintiff. Ruch again returned to the plaintiff's car. In response to his questions, the plaintiff stated that she had weighed more when she was pregnant but not otherwise.

According to the plaintiff's affidavit, Officer Ruch expressed to the plaintiff his and the radio dispatcher's confusion about how to proceed on the arrest warrant, considering the differences between the height and weight of the person named in the warrant and the plaintiff's height and weight. Ultimately, the officers took the plaintiff into custody. They did not handcuff her and they allowed her to sit in the front seat of the squad car as they drove her to be booked and jailed. The following morning, the plaintiff was released from jail upon posting $500 bond.

After the plaintiff made three appearances to defend against the felony theft charge for which she was arrested, on January 30, 1986, charges were dismissed against her. The plaintiff was not charged

thereafter.

The plaintiff filed the instant suit in response to her arrest and imprisonment. In count I of the suit the plaintiff alleged pursuant to section 1983 of Title 42 of the United States Code (42 U.S.C. sec. 1983 (1982)), that the officers' conduct had caused her to be deprived of rights secured under the United States Constitution. Specifically, she claimed deprivation of her right to freedom from unreasonable seizure and right to freedom from deprivation of life, liberty, or property without due process of law. In count II of the suit, in allegations sounding in Illinois common law for false arrest and false imprisonment, the plaintiff alleged that her arrest and confinement were illegal, without probable cause, and the proximate cause of her loss of liberty.

The court granted the officers' motion for summary judgment on both counts. The plaintiff brought the instant appeal. In relation to both counts she argues on appeal that the court erred in ordering summary judgment as the pleadings, depositions and admissions on file, together with affidavits, revealed genuine issues of material fact and that the officers were not entitled to judgment as a matter of law. Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.

■ The petitioner first argues on appeal that summary judgment was inappropriate on her section 1983 claim, as the validity of her arrest depended upon the officers' belief and intent in arresting her. We, however, agree with the officers that the court was not required to determine their intent in arresting the plaintiff.

To establish a cause of action under section 1983, a claimant must show that a person's action under color of State law deprived the claimant of a right, privilege, or immunity secured under the laws or the Constitution of the United States. 42 U.S.C. sec. 1983 (1982); *Parratt v. Taylor* (1981), 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908.

Like the respondent in *Baker v. McCollan* (1979), 443 U.S. 137, 61 L. Ed. 2d 433, 99 S. Ct. 2689, the instant plaintiff was deprived of no rights secured under the United States Constitution and laws. In *Baker*, the respondent's brother had been arrested and released on bail for narcotics charges. He had identified himself with a duplicate of the respondent's driver's license bearing his own photograph rather than the respondent's. When respondent Baker was subsequently stopped for a traffic violation, following a routine warrant check the police arrested him on the outstanding warrant for his brother. Despite his protests of mistaken identity, respondent Baker was detained in the county jail from December 30 until January 2, when officials

recognized their mistake.

The Supreme Court in *Baker* declined to reach the issue of the officials' liability under section 1983. Rather, it found that whatever tort claims were raised, there was no section 1983 deprivation to the respondent, who was arrested under a facially valid arrest warrant. In finding no constitutional deprivation to raise a section 1983 claim, the court considered that the sheriff was aware of respondent Baker's claim of mistaken identity and that the respondent was detained for three days over the New Year's weekend. It noted, however, that the fourteenth amendment does not protect against all deprivations of liberty, and that the Constitution does not guarantee that only the guilty will be arrested. It also noted that the Constitution does not require that arresting or imprisoning officials perform error-free investigations of an arrestee's possible innocence.

■ Considering the instant facts in light of authorities, including *Baker*, we find that the court properly granted summary judgment on the plaintiff's section 1983 claim. The officers arrested the plaintiff in response to an arrest warrant for a subject with her sex, race, birth date, and name. The plaintiff acknowledges the facial validity of that warrant. The plaintiff's arrest and resulting 10-hour detention no more rose to a constitutional deprivation than did the detention of respondent Baker.

The plaintiff's argument regarding the summary judgment on count II is in two parts. First, the plaintiff urges that Illinois should hold the officers strictly liable for false arrest under circumstances like these. According to both parties and our own research, Illinois courts have not specifically considered a police officer's tort liability for false arrest or imprisonment arising from service of a facially valid arrest warrant upon a misidentified individual. There are two general views of this issue. See 39 A.L.R.4th 699, 705 (1985).

The majority of States which have addressed the instant question relieve an officer of liability where he had a reasonable or good-faith belief that the person arrested was the person named in the warrant. (*E.g.*, *Robinson v. City & County of San Francisco* (1974), 41 Cal. App. 3d 334, 116 Cal. Rptr. 125.) Some States, however, consider that an officer acts at his peril in effecting a warrant and, thus, is entitled to no immunity for false arrest or imprisonment. *E.g.*, *Formwalt v. Hylton* (1886), 66 Tex. 288, 1 S.W. 376; *Clark v. Heard* (S.D. Tex. 1982), 538 F. Supp. 800.

We have reviewed numerous cases from our sister States and are persuaded that Illinois should follow the majority view. Adoption of strict civil liability for peace officers effecting facially valid arrest

warrants could easily impede administration of warrants. Criminals might escape on account of the timidity or caution of officers. Furthermore, under such a strict liability system a misidentified arrestee or prisoner might choose to remain silent about the misidentification in order to collect damages from officials.

On the other hand, good-faith immunity in these cases both encourages peace officers to arrest and detain suspected criminals and protects the public from malice or negligence. Furthermore, a good-faith rule in Illinois is consonant with related statutes. The relevant part of section 107—2 of the Code of Criminal Procedure of 1963 provides that a peace officer may arrest a person either upon reasonable grounds to believe that a warrant for the person's arrest has been issued or upon reasonable grounds to believe that the person has committed an offense. (Ill. Rev. Stat. 1985, ch. 38, par. 107—2.) As the Code suggests immunity even for an officer arresting on reasonable grounds without a warrant, we find an even stronger suggestion that section 107—2 expresses a legislative intent to shield an officer from liability when he arrests upon reasonable grounds or in good faith. See *O'Neill v. Keeling* (1939), 227 Iowa 754, 288 N.W. 887. See also Ill. Rev. Stat. 1985, ch. 85, par. 2—202; *Wilson v. Hunk* (1977), 51 Ill. App. 3d 1030, 367 N.E.2d 478.

■ We hold that a peace officer who arrests or imprisons a person misidentified as the subject of a facially valid arrest warrant is immune from civil liability if he acts in good faith, *i.e.*, after due diligence and upon a reasonable belief that the arrestee is the person intended. The evidence of possible misidentification which was revealed to the officer, the officer's investigation of possible misidentification, and the officer's subjective impressions and intent should all be considered in light of the other circumstances to determine whether his action was in good faith. See *O'Neill v. Keeling* (1939), 227 Iowa 754, 288 N.W. 887; *Craner v. Corbett* (1967), 27 A.D.2d 796, 279 N.Y.S.2d 135; *Robinson v. City & County of San Francisco* (1974), 41 Cal. App. 3d 334, 116 Cal. Rptr. 125.

■ Having decided that the officers were not subject to Illinois tort liability if they acted in good faith, we lastly consider whether the court properly found no genuine issue of material fact on count II. The court was presented evidence that the plaintiff's height, weight, and address differed from that of the warrant's subject. It also was presented evidence that Officer Ruch stated to the plaintiff that he was uncertain whether he should arrest her under the warrant. Additionally, there was evidence that after arresting the plaintiff, the officers transported her without handcuffs and in the squad car's front seat.

The torts of false arrest and false imprisonment consist of unlawful, involuntary restraint of an individual's personal liberty. (See *Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 426 N.E.2d 604; Ill. Rev. Stat. 1985, ch. 38, par. 107—2.) Additionally, as we have held, the defendants were immune from tort liability on any false arrest or false imprisonment only if they acted in good faith. We agree with the plaintiff's alternative argument that the evidence on file, when construed to favor the plaintiff, established a *prima facie* case of false arrest or imprisonment and that the officers were not immune from liability as a matter of law. Although this case presents many circumstances to support the officer's actions, there is a factual issue on the material question of whether the officers acted in good faith. Accordingly, summary judgment was improper on count II. Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.

Based on the foregoing, we affirm the order of the Kankakee County circuit court granting the officers summary judgment on the plaintiff's count I. We reverse the order granting summary judgment on count II. We remand for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

BARRY and STOUDER, JJ., concur.