No. 2--07--0769          Filed:  10-22-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| HILARIO MERCADO, JR., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 04--L--1063 |
| | ) | |
| THE VILLAGE OF ADDISON, | ) | Honorable |
| | ) | Robert K. Kilander, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Hilario Mercado, Jr., attended a family birthday party on September 27, 2003. When a fight broke out at the party, the police were called.  They learned that a bench warrant had been issued for Hilario Mercado, Jr., for failing to appear in court on charges of shoplifting and obstructing justice.  Later, it was learned that plaintiff's identity had been stolen and that the person who failed to appear was not plaintiff, but Ruben Vazquez.  Plaintiff then sued defendant, the Village of Addison, for false arrest and false imprisonment.  The trial court granted defendant summary judgment, holding that the officers had probable cause to arrest plaintiff and that their actions were not willful and wanton as a matter of law.  Plaintiff appeals, contending that the officers had a duty to investigate his claim of mistaken identity.  We affirm.

Addison police officers Steven Anderson and Barry Muniz and Sergeant Steve Ruggiero responded to a report of a disturbance at a party. As they arrived, plaintiff and another person were leaving the building and appeared to be upset. When Anderson requested identification, plaintiff presented his state identification card. Anderson had the dispatcher run plaintiff's name, race, sex, and date of birth through the LEADS system and learned that a "no bond" warrant had been issued for Hilario Mercado, Jr., on a charge of retail theft. The dispatcher called the entering agency, the Du Page County sheriff's office, and learned that the warrant was still valid. The Du Page County warrant indicated plaintiff's name, date of birth, address, driver's licence number, social security number, eye color, hair color, height, and weight.

The officers explained the warrant to plaintiff and arrested him. Muniz took him to the Du Page County jail. According to plaintiff, he protested repeatedly that he was not the subject of the warrant, had never been arrested for shoplifting, and had never missed court. The officers denied that plaintiff ever said that he was not the person they wanted. Anderson testified at his deposition that, even if plaintiff had complained, they had discretion to take him to the county jail anyway. According to Anderson, the officers had no reason to believe that plaintiff was not the person for whom the warrant was intended, but, even if they had, the jail would have been better equipped to decide if plaintiff was the person wanted, because the jail presumably had a photograph of the suspect.

In his complaint, plaintiff alleged that an arrest report from the original incident was on file at the Bloomingdale police department. However, plaintiff was arrested about 2:30 a.m. on Sunday, September 28, 2003. The officers testified that it was unlikely that anyone would have been at the

Bloomingdale police station to provide information. Photographs or fingerprint cards faxed to the Addison police station would not have been legible.

Muniz took plaintiff to the county jail. Plaintiff complained to a woman behind a window that he had been misidentified, but she said that there was nothing she could do. On Monday, September 29, 2003, plaintiff appeared in court, but he said nothing about a possible mistaken identification. He merely requested a court-appointed attorney. Later that day, plaintiff contacted his personal attorney, Paul DeLuca. DeLuca attended an October 2, 2003, court hearing. At that hearing, the court ordered a fingerprint analysis, which revealed that plaintiff was not the person who committed the retail theft in Bloomingdale. Plaintiff was released later that day.

Plaintiff then sued defendant for false arrest and false imprisonment. Defendant moved for summary judgment. The trial court granted the motion, finding that the officers had probable cause to arrest plaintiff and that their actions were not willful and wanton. Plaintiff timely appealed.

Plaintiff contends that the trial court should not have granted defendant summary judgment, because questions of material fact existed regarding whether the officers had a duty to investigate his claims of mistaken identity and whether their failure to do so amounted to willful and wanton conduct. Defendant responds that the officers' conduct could not be considered willful and wanton where the warrant named plaintiff, all of the identifying information in the warrant matched plaintiff, the only reason to suspect that plaintiff was not the person for whom the warrant was intended was his own unsubstantiated claims, and there was no expeditious way to investigate those claims at 2:30 a.m. on Sunday.

Initially, we note that summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is

entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2006). "Although summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic means of disposing of litigation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt." Williams v. Manchester, 228 Ill. 2d 404, 417 (2008). In ruling on a motion for summary judgment, the court must construe the evidence strongly against the movant and liberally in favor of the nonmovant. Caponi v. Larry's 66, 236 Ill. App. 3d 660, 670 (1992). We review de novo a challenge to the propriety of an order granting summary judgment. Bagent v. Blessing Care Corp., 224 Ill. 2d 154, 163 (2007).

To succeed on his claims of false arrest and false imprisonment, plaintiff needed to show that defendant, through its police officers, arrested or restrained him without reasonable grounds to believe that he committed an offense. Meerbrey v. Marshall Field & Co., 139 Ill. 2d 455, 474 (1990); Ross v. Mauro Chevrolet, 369 Ill. App. 3d 794, 798 (2006). In addition, because the Local Governmental and Governmental Employees Tort Immunity Act immunizes defendant's employees for their "act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct" (745 ILCS 10/2--202 (West 2006)), and because a governmental entity is not liable where its employee is not liable (745 ILCS 10/2--109 (West 2006)), plaintiff also had to establish that defendant's conduct was willful and wanton. Willful and wanton conduct is a course of action that either is intentional or "shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1--210 (West 2006).

Initially, we note that the trial court held that the officers had probable cause to arrest plaintiff. The parties also use the term "probable cause." While many cases involving warrantless arrests use the "probable cause" terminology (see, e.g., Ross, 369 Ill. App. 3d at 800, quoting

-4-

Hernandez v. Sheahan, 455 F.3d 772, 775 (7th Cir. 2006) (" 'All the police need is probable cause' ")), the "probable cause" test does not translate to cases of arrests based on warrants, because police in those situations act on warrants already presumably supported by probable cause. Instead, as the Georgia Supreme Court has stated, the "defendant police officer who pleads justification must show for a warrantless arrest that he acted on probable cause [citations] and for an arrest under a warrant that he reasonably executed it." Stewart v. Williams, 243 Ga. 580, 583, 255 S.E.2d 699, 701-02 (1979). In making this statement, the Georgia Supreme Court cited the Restatement (Second) of Torts, which provides a workable test where the arresting officers are effecting a facially valid warrant:

" 'An arrest under a warrant is not privileged unless the person arrested (a) is a person sufficiently named or otherwise described in the warrant and is, or is reasonably believed by the actor to be, the person intended, or (b) although not such person, has knowingly caused the actor to believe him to be so.' " Stewart, 243 Ga. at 583, 255 S.E.2d at 702, quoting Restatement (Second) of Torts §125 (1965).

We adopt the above principle from the Restatement. The question here, then, is whether Anderson and Muniz reasonably believed that plaintiff was the person named in the warrant. The trial court found that they did, and we agree. After the officers encountered plaintiff, a check of the LEADS system revealed a warrant commanding them to arrest Hilario Mercado, Jr. The name, date of birth, address, driver's licence number, social security number, eye color, hair color, height, and weight on the warrant matched plaintiff's information, and the officers verified plaintiff's name, date of birth, race, and sex before arresting him. In short, plaintiff was unquestionably the person named in the warrant. His alleged protests that he was not the person wanted were vindicated when plaintiff

was later exonerated, but the fact remains that plaintiff was the person identified in the warrant, even if the warrant actually identified the wrong person. Accordingly, because plaintiff was in fact the person identified in the warrant, we hold that the officers did not act unreasonably in arresting plaintiff based on the warrant.

Plaintiff cites Riley v. Fairfield, 160 Ill. App. 3d 397 (1987), to support his contention that the officers had a duty to investigate his claim of mistaken identity. There, police arrested the plaintiff pursuant to a warrant for someone with the plaintiff's name and birth date, but with a different address. The dispatcher informed the officer that the subject of the warrant, like the plaintiff, was an African-American woman, but the warrant subject was approximately 2 inches taller and 20 to 30 pounds heavier than the plaintiff. The appellate court reversed summary judgment for the defendant on the plaintiff's claims of false arrest and false imprisonment. Riley, however, is readily distinguishable. The issue in Riley was whether the officers acted reasonably in arresting the plaintiff after noting discrepancies between the plaintiff and the identifying information in the warrant. Here, by contrast, plaintiff does not contest that the warrant identified him.

The officers here correctly believed that plaintiff was the person named in the warrant, and thus the officers' conduct was not unreasonable, let alone willful and wanton. The fault here, if any, lies with the authority that apparently mistakenly issued a warrant for plaintiff's arrest, not with the police officers who executed the warrant.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN, J., concurs.

JUSTICE McLAREN, specially concurring:

I specially concur because I wish to distance myself from several statements contained in the majority opinion.

First, in reference to the Restatement (Second) of Torts, the majority states:

" ' "An arrest under a warrant is not privileged unless the person arrested (a) is a person sufficiently named or otherwise described in the warrant and is, or is reasonably believed by the actor to be, the person intended, or (b) although not such person, has knowingly caused the actor to believe him to be so." ' Stewart, 243 Ga. at 583, 255 S.E.2d at 702, quoting Restatement (Second) of Torts §125 (1965).

We adopt the above principle from the Restatement." Slip op. at 5.

Thus, the majority sets forth a portion of the Restatement and then adopts the "principle" from that section.

What is not clear is which principle the majority has adopted. Is it the principle of privilege set forth in the Restatement? Is it the principle that the defendant has the burden of proof to establish at least one of the two prongs necessary to establish privilege? Is it the principle that the burden of proof has now been shifted from the plaintiff to the defendant? Rather than requiring the plaintiff to prove willful and wanton conduct, is the defendant now required to prove privilege from liability for arresting the wrong individual?

In my opinion, there is no need for, nor benefit derived from, citing the Restatement. The issues of probable cause to believe that a crime has been committed and that the person arrested is probably the perpetrator are eliminated by the issuance of a warrant. The majority's reference to Georgia law and the incorporation of the Restatement add little but confusion to Illinois's

requirements for proving willful and wanton conduct. Section 1--210 of the Local Governmental and Governmental Employees Tort Immunity Act defines "willful and wanton conduct" as follows:

> "[A] course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1--210 (West 2006).

Conspicuously absent from this statutory definition, which the majority acknowledges applies here (see slip op. at 4), is any reference to the reasonableness of the conduct. Yet the majority takes the unnecessary step of analyzing the officers' conduct pursuant to a "reasonableness" standard and concluding that the conduct was "not unreasonable, let alone willful and wanton." (Emphasis added.) Slip op. at 6. The sole issue on appeal is: was the officers' conduct not willful and wanton as a matter of law? The majority's statement that the officers' conduct was not unreasonable is immaterial and gratuitous. What is the value of analyzing the facts under a nonstatutory, lesser standard? Had the majority found that the officers' conduct was unreasonable, it then still would have to analyze the case under the proper "willful and wanton" standard.

The majority uses the term "principle" for what it purports to adopt. The majority uses this language in order to avoid what is readily apparent: this is an attempt to adopt the Restatement. However, there is no reported authority for an inferior court to adopt a Restatement; that prerogative has been left to our supreme court. See In re Marriage of Chrobak, 349 Ill. App. 3d 894, 898 (2004) ("Because the Restatement has not been adopted by our supreme court, it is not the law and merely

provides guidance"). The majority does not have the authority to impose the quoted section of the Restatement in contravention of clear Illinois law relating to willful and wanton conduct.

An appellate court has the apparent authority to adopt a Restatement "principle." See Handelsman v. Handelsman, 366 Ill. App. 3d 1122, 1130 (2006). In Handelsman, this court adopted the principle from the Restatement (Third) of Property that, "in general, will substitutes are to be construed according to the rules used to construe wills." Handelsman, 366 Ill. App. 3d at 1130. This, indeed, was the adoption of a "principle"; this court did not adopt any specific Restatement section or analysis, especially one that contradicted existing law by changing the burden of proof and the standard of conduct. Here, the majority does not even cite to Handelsman or any other case for the fig leaf of authority to adopt a "principle." However, since the majority adopts a "principle" that is in fact not a principle but a two-pronged test set forth in the Restatement, without the authority to do so, such a citation would be nothing more than window dressing anyway.

Second, since the majority went to the trouble of reaching the conclusion that "the officers' conduct was not unreasonable" (slip op. at 6), I will address this improper and incorrect conclusion. The officers denied that they were told of the misidentification. Thus, it is reasonable to conclude that they did nothing in response to further identify plaintiff beyond looking at the information contained in the warrant. However, for purposes of analysis, the majority adopts plaintiff's contention that he repeatedly told the officers that he was not the party against whom the warrant was issued. I submit that there were several things that the officers could reasonably have done in response to the claim of misidentification. At a minimum, they could have reported plaintiff's claim to the jailers. The jail personnel could have then related the claim to the judge at bond court. Also, the officers could have inquired if there was a photograph or other identifying material that could

easily have been compared. Had they done so, they may have received information to cause them to question the arrest. Regardless of whether they should have released him if such information was found, they could have given that information to the jailers so that it could be presented to the judge at bond court. Considering the prevalence of stolen identities in these times, I do not consider it reasonable for an officer to do nothing when he is told that a person taken into custody pursuant to a warrant is not the person against whom the warrant was issued. Accepting the facts as alleged by plaintiff, I do not believe that what the officers did was reasonable. However, the unreasonable conduct here did not rise to the level of willful and wanton conduct. Nevertheless, since what is reasonable is not the touchstone of what constitutes willful and wanton conduct, there is no reason for the majority to address this nonissue. Further, I will not speculate as to whether the officers' unreasonable behavior rose to the (equally irrelevant) level of negligence.

Finally, the majority concludes with the statement, "The fault here, if any, lies with the authority that apparently mistakenly issued a warrant for plaintiff's arrest, not with the police officers who executed the warrant." Slip op. at 6. I wish to distance myself from this statement. First, I disagree with this gratuitous comment. In my opinion, the accepted facts in this case do not establish fault at all. Second, such a comment does not illuminate, define, or explain the sole issue on appeal: was the officers' conduct not willful and wanton as a matter of law?