In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1497

NATIONAL CASUALTY COMPANY, ET AL.,

*Plaintiffs-Appellees,*

*v.*

MICHAEL M. MCFATRIDGE, ET AL.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:07-cv-02056-HAB-DCB—**Harold A. Baker**, *Judge.*

ARGUED SEPTEMBER 22, 2009—DECIDED APRIL 28, 2010

Before EASTERBROOK, *Chief Judge,* and BAUER and ROVNER, *Circuit Judges*.

BAUER, *Circuit Judge.* Plaintiffs National Casualty Company and Scottsdale Indemnity Company provided commercial general liability ("CGL") and law enforcement insurance to Edgar County, Illinois, via a series of policies. In 2005, Gordon "Randy" Steidl sued Edgar County and its former state's attorney, Michael

McFatridge for damages stemming from Steidl's 1986 conviction for murder, which a federal court overturned in 2003. The district court held that National Casualty Company and Scottsdale Indemnity Company have no obligation to defend or indemnify McFatridge or the county under four insurance policies issued in 1989, 1997, 1998 and 1999. The county and McFatridge appeal and we affirm.

## I. BACKGROUND

In 1987, Steidl was convicted in Edgar County of murder. Eventually, Steidl's appeals entered the federal system under 28 U.S.C. § 2254. In June 2003, the district court granted a writ of habeas corpus based on ineffectual counsel at the trial and sentencing in the state court.

Steidl sued, under 28 U.S.C. § 1983 and Illinois law, a number of officials involved in the prosecution, including Illinois State Police and Paris police officers who had investigated the murders, and former Edgar County State's Attorney Michael McFatridge, who was involved in the investigation and prosecution. Steidl also named the County of Edgar as a defendant and necessary party.

According to the complaint, McFatridge, in coopera-tion with Paris police, framed and falsely prosecuted Steidl. The complaint says that McFatridge coerced and threatened two key witnesses, induced them to testify falsely, and concealed numerous pieces of exculpa-tory evidence during the trial. Steidl also claims that throughout the post-conviction proceedings, even after

McFatridge left office in 1991, he continued to coerce witnesses, lied about the evidence, and engaged in a publicity campaign defending the trial and Steidl's conviction.

Steidl's suit seeks damages for false arrest, false imprisonment, malicious prosecution, conspiracy and intentional infliction of emotional distress. The county tendered the suit to National and Scottsdale, believing itself entitled to a legal defense and indemnification under each of four insurance policies the companies issued. The insurers responded by filing a declaratory judgment action, asking the court to determine that they had no duty to defend or indemnify the county under any of the policies.

There are four separate insurance policies at issue, each in effect at a different time: A law enforcement liability policy issued by Scottsdale Insurance Company was in effect from May 25, 1989, until May 25, 1990. It named "County of Edgar S.D." as the insured. In addition, three CGL policies—two issued by Scottsdale Indemnity Company, and one issued by National Casualty Company—insured Edgar County from July 1, 1997, until July 1, 2000. Each of the three policies covered a one-year period.

Edgar County argued that the policies are at least ambiguous about whether they provide it or McFatridge coverage for liability to Steidl, and should be read against the drafters, in favor of a duty to defend. The district court granted summary judgment for the insurers.

First, the court found no coverage for McFatridge under the law enforcement policy in effect from May 1989

through May 1990 because the state's attorney was not a "Class C" employee under that policy. In addition, while indicating that McFatridge's conduct during the post-conviction proceedings "suggests the possibility of coverage" under the two CGL policies in effect in 1998 and early 1999, the court pointed out that McFatridge left office in 1991. It held that the CGL policies did not cover acts by *former* officials or employees committed during the policy periods; therefore, McFatridge was not an insured under any of the three CGL policies.

Edgar County appealed the district court's decision and filed this appeal.

## II. DISCUSSION

In determining whether the insurance companies must provide former Edgar County State's Attorney Michael McFatridge with coverage—a legal defense and/or indemnity—for liability arising from Steidl's prosecution and conviction, we look to Illinois law, which the parties agree governs this dispute. *Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 349 (7th Cir. 2003). We review the district court's grant of summary judgment de novo. *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 643 (7th Cir. 2007).

### A. Duty to Defend

An insurer's duty to defend its insured is broader than its duty to indemnify. If an insurer has no duty to defend,

it has no duty to indemnify. We determine whether an insurer has a duty to defend by examining the underlying complaint and the language of the insurance policy. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). Any doubts as to whether particular claims fall within the policy are resolved in favor of coverage. *Del Monte Fresh Produce*, 500 F.3d at 643. So if the "complaint asserts facts within or potentially within policy coverage, an insurer is obligated to defend its insured." *Gen. Agents*, 828 N.E.2d at 1098. On the other hand, an insurer may refuse to defend an action in which, from the face of the complaint, the allegations are clearly outside the bounds of the policy coverage. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991).

Each of the four policies in question provided "occurrence" coverage and name "County of Edgar" or "County of Edgar S.D." as named insureds. Coverage depends on whether the particular policy contemplated coverage for McFatridge or the state's attorney's office, if it does, we ask whether any of the allegations in Steidl's complaint "occurred" during the coverage periods.

The county argues that as state's attorney, McFatridge was an insured under the law enforcement policy in effect from May 1989 until May 1990. During that policy period, the complaint says that McFatridge made false public statements about Steidl's guilt, coerced witnesses to prevent them from recanting false testimony and provided fabricated evidence to the post-conviction court. According to the county, Scottsdale has a duty to

defend because McFatridge was an insured under the law enforcement policy and is potentially liable for conduct within the policy period. And, in addition, even though he left office in 1991, the county contends that CGL policies in effect from mid-1997 until mid-2000 require Scottsdale and National to defend it and McFatridge. It claims that McFatridge is an insured under the third CGL policy because it contains an endorsement that lists "persons who . . . were . . . your lawfully elected . . . officials" as covered under that policy.[1] Alternatively, the county argues that McFatridge participated in a long-running conspiracy to deprive Steidl of a fair trial, that began when he was a public official with Edgar County and continued into the CGL policy periods. Any conduct that occurred after McFatridge left office was therefore part of a single continuing offense committed under McFatridge's authority as state's attorney. This at least raises an ambiguity, according to the county, about whether a former official

---

[1] The county's brief cites to a "public officials liability coverage form," Appellants' Brief at 18; App. at A-114-115, as support for this contention. But this form plainly excludes any duty to defend against McFatridge's claims. It says the insurer "will not be obligated . . . to defend any 'suit' in connection with any 'claim' made against the insured . . . [f]or false arrest, false imprisonment, . . . defamation . . . malicious prosecution or abuse of process." A nearly identical form in the same policy entitled, "Law Enforcement Liability Coverage Form" also lists persons who "were" elected officials as insureds, App. at A-94-96. We address the county's argument under this coverage form.

is an insured under the CGL policies for wrongful acts that continued into the policy period, because the course of conduct began when he was state's attorney.

Finally, the county suggests that, regardless of the state's attorney's status as an insured, the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/9-102 (2006), requires it to reimburse the state's attorney for its liability. If it is liable for acts McFatridge took during the policy periods, the county argues that the insurers must provide a defense and indemnity. We address coverage under each argument in turn.

## 1. The Law Enforcement Policy—Duty to Defend

Because the law enforcement policy was in effect during McFatridge's tenure as state's attorney and provides slightly different coverage, we discuss it separately from the three CGL policies.

Scottsdale issued the law enforcement policy, which was in effect from May 25, 1989, until May 25, 1990. The law enforcement policy required Scottsdale to pay all sums "which the *insured* shall become legally obligated to pay . . . because of wrongful acts . . . caused by an occurrence and arising out of the performance of the *insured*'s duties to provide law enforcement." App. at A-163 (emphasis added). Under that policy, "insured— means the named insured and all full or part-time and all auxiliary or volunteer law enforcement officers of the

named insured." App. at A-164. It defines "occurrence" as "an event, including continuous or repeated exposure to conditions, which results in personal injury . . . sustained during the policy period."

We first address whether the law enforcement policy contemplated coverage for liability for the acts of McFatridge in his role as state's attorney. "County of Edgar S.D." is the named insured in the policy. The county defendants argue that whether or not County of Edgar S.D. refers to the sheriff's department is ambiguous and so should be read in favor of coverage for the County of Edgar as a whole. However, an endorsement to the policy names "County of Edgar, IL" as an additional insured. The endorsement specifies that County of Edgar is only an insured "with respect[] to liability arising out of the activities of the named insured," or County of Edgar S.D. Looking at the "type of insurance purchased, the nature of the risk involved, and the overall purpose of the contract," *Nicor, Inc. v. Assoc. Elec. and Gas Ins. Serv. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006), (in this case the provision of law enforcement coverage), we think the policy clearly contemplated County of Edgar Sheriff's Department as the named insured. The sheriff is the county's main law enforcement official. The county's contention that "County of Edgar S.D." is ambiguous because it *could* mean something else does not make it so. *See Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2007) (internal citations omitted) (terms are not ambiguous "simply if the parties can suggest creative possibilities for their meaning"). We will not strain to interpret a

particular provision in a way that would render another provision meaningless. *Shelton v. Andres*, 478 N.E.2d 311, 314 (Ill. 1985). Reading "County of Edgar S.D." as ambiguous and potentially naming the county as a whole would render the endorsement naming County of Edgar itself meaningless. But if, as we conclude, the sheriff's department is the named insured, the endorsement negotiated by the parties and separately added to the policy has meaning.

Moreover, the other policies at issue, which no one disputes insure the county government itself, list "County of Edgar" as the named insured indicating a distinction between CGL insurance provided to the county government, and law enforcement coverage purchased for the sheriff's department.

Further undercutting the county's argument on this point is that the address on the policy for "County of Edgar S.D." is different from that of the county government. The named insured on the law enforcement policy is located at 228 North Central Avenue, the same address listed publicly by the county for its sheriff's department. http://www.edgarcounty-il.gov/Sheriff/default.aspx (last visited Apr. 8, 2010). The address for the County of Edgar itself, both according to the CGL policies and the county's website, is "Edgar County Courthouse," which is actually located at 115 West Court Street in Paris. http://www.edgarcounty-il.gov/CountyClerk/default.aspx (last visited Apr. 8, 2010).

The endorsement does provide coverage for Edgar County as an additional insured. But it does not cover

McFatridge or the state's attorney's office for the claims in Steidl's suit. Edgar County is an additional insured "only with respect[] to liability arising out of the activities of the named insured," the sheriff's department. However, the law enforcement policy does not contemplate coverage for all law enforcement activity simply by virtue of its taking place within Edgar County. McFatridge and the state's attorney's office became involved as the *state's* chief prosecuting official in Edgar County. The state's attorney's duty in this case arises from Illinois law, and not "out of the activities of the [sheriff's department]." Under state law the state's attorney must "prosecute all . . . indictments and prosecutions . . . in the circuit court for his county." 55 Ill. Comp. Stat. 5/3-9005(a)(1). When McFatridge investigated, charged and prosecuted Steidl, he engaged in activity arising out of his duties as state's attorney as defined by Illinois law, not as part of the activities of the County of Edgar Sheriff's Department. A reading of Steidl's complaint reveals that the sheriff's department was not involved in the investigation and its activities are not the subject of the lawsuit. McFatridge worked solely with the Paris police and Illinois State Police. In short, the county is not insured in this case because any liability it might have to Steidl for his wrongful prosecution arises only through the activity of the state's attorney and not through any activities of the sheriff's department.

If coverage for the county in Steidl's case were not already foreclosed by the fact that the law enforcement policy and its endorsement cover sheriff's department activities only, the rest of the policy's terms unambigu-

ously do the job. The terms of the "Insuring Agreement" explicitly provide that the policy provides coverage in the event of an injury or damage caused by an "occurrence." The policy defines "occurrence" as "an event, . . . which results in . . . injury . . . and arising out of the performance of the *insured's* law enforcement duties." App. at A-164 (emphasis added). As mentioned above, the insureds in this case are the sheriff's department and the county, but only for "liability arising out of the activities" of the sheriff's department. There is no such liability here. McFatridge's involvement arose out of his duty as state's attorney and the activities of the Paris police and Illinois State Police. With no law enforcement activity by the sheriff's department, there was no covered "occurrence" and no duty for Scottsdale to defend the county in this case.

Despite this seemingly clear language limiting coverage to situations where liability arose from sheriff department activities, Edgar County further maintains that ambiguity in the "Conditions" section of the policy creates the possibility of coverage for McFatridge. The section provides as follows:

> 1. PREMIUM. . . . For the purpose of determining the actual premium, the following definitions will apply:
>
> > . . . .
> >
> > "Class C Employees"—those employees who do not exercise power of arrest and whose duties are only administrative in nature."

App. at A-164. The policy then lists specific positions that are part of the Class C category—county commissioner, mayor, auxiliary police officer and coroner. The district court held that McFatridge and the Edgar County State's Attorney are not Class C employees because under Illinois law the state's attorney's duties are not just "administrative" in nature, a construction which the plaintiffs National and Scottsdale urge us to affirm. Edgar County maintains that the state's attorney fits within this definition because he is not specifically excluded, does not have the power of arrest, and "provides administrative assistance to law enforcement." But the plain language of this section indicates that in order to be a "Class C" employee, one must be an "employee" of the insured. McFatridge is not an employee of the sheriff's department or the county, and cannot be a Class C employee under the law enforcement policy. The best characterization of the *state*'s attorney is that he is a state constitutional official with jurisdiction in the county in which he is elected. He can serve as an agent of the county when representing county officers in suits brought against them or on their behalf. 55 Ill. Comp. Stat. 5/3-9005(a)(3), (4). But his primary duty is prosecuting criminal actions—a function he fulfills as a state employee. 55 Ill. Comp. Stat. 5/3-9005(a)(1). The government of the county in which the state's attorney is elected has neither the power to direct, oversee nor control these prosecutions; the state's attorney is not its employee. Further, Illinois law explicitly holds that the state's attorney is a state, and not a county employee. *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995);

*Ingemunson v. Hedges*, 549 N.E.2d 1269 (Ill. 1990) ("[D]rafters of our present constitution agreed . . . that state's attorneys should be classified as state, rather than county officers.").

That the Illinois Constitution treats state's attorneys differently from other county officials adds further support to this holding. The position of state's attorney is created in the judicial article. Ill. Const. art. VI, § 19. Counties have no power to eliminate the state's attorney position and multiple counties may share a single state's attorney only if the voters in each county agree. *Id.* By contrast, all other county offices are created within the constitution's local government article. *Id.* at art. VII, § 4 (sheriff, clerk, treasurer, coroner, assessor, recorder, auditor). Unlike its limited power over the state's attorney, the county can completely eliminate any of these positions via referendum and can even eliminate some simply by passing an ordinance. *Id.*

Acknowledging this authority, the county attempts to distinguish the Illinois cases and constitutional framework by pointing out that the state's attorney serves as the county's attorney—its agent—in civil actions brought by, and against the county. The budget for the state's attorney's office and a portion of his salary come from county coffers, suggesting that the state's attorney may be a county employee in some situations. The problem with this argument is that it also proves the opposite point: when prosecuting criminal cases, such as the case against Steidl, the state's attorney acts in his independent capacity as a representative of the people of

Illinois in the county in which he works. While the county does pay a portion of the salary, the state pays two-thirds, a division that would seem to reflect the division between the state's attorney's duties as a criminal prosecutor and service to the county in other circumstances. *See* 55 Ill. Comp. Stat. 5/4-2001(a). It is true, as the county points out that the state's attorney can be characterized a county agent at various times. But when McFatridge investigated, charged and prosecuted Steidl, he acted on behalf of the state and was not a Class C employee of Edgar County or even an employee at all.

Finally, we note that even if none of the above was true regarding the state's attorney's non-status as a county employee, it is doubtful that the "Conditions" section of the law enforcement policy would give rise to the insurer's duty to defend. As the insurers point out, this section purports only to define classes of employees for purposes of calculating premiums. It says nothing about changing other definitions in the policy describing who is an insured. So a duty to defend the insured for an act of a "Class C" employee arises only if the other policy requirements and definitions are satisfied. For example, the "Insuring Agreement" says that the policy will pay damages caused by the *insured's* wrongful acts "arising out of the performance of the *insured's duties* to provide law enforcement" activity. As discussed above, the "insured" is the sheriff's department with the County of Edgar being additionally covered. So acts are covered only if they arise out of the performance of the sheriff's department's law enforcement duties, or at

its very broadest, the county's law enforcement duties. McFatridge's prosecution of Steidl had nothing to do with duties of either the county or its sheriff's department to provide law enforcement activities. Based on the complaint, the county and its sheriff's department had nothing to do with the prosecution and any misconduct by McFatridge was not part of the county's "duties to provide law enforcement." Even if McFatridge fit the definition of a "Class C" employee, which he does not, the insurer has no duty to defend him under the law enforcement policy because the "Insuring Agreement" limits coverage to liability for those acts of the various classes of employees undertaken pursuant to the county's duty to provide law enforcement. The definition of Class C employees does nothing to change this and the insurers have no duty to defend under the law enforcement policy.

### 2.   McFatridge as an Insured—The CGL Policies

Like the law enforcement policies, the three CGL policies cover the county on an occurrence basis. To determine whether the insurers have a duty to defend, we match the factual allegations in Steidl's complaint against each of the policies to determine whether any of the claims fall within the coverage. *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 819 (7th Cir. 2008). Any ambiguities in the policy are resolved in the insured's favor.

The three CGL policies did not take effect until after McFatridge left the state's attorney's office. They offer nearly identical coverage. Each policy covers

" '[p]ersonal injury' caused by an offense arising out of [County of Edgar's] business . . . but only if the offense was committed . . . during the policy period." App. at A-27, A-50, A-74. All three policies covered personal injury arising from offenses such as "false arrest, detention or imprisonment" and "[m]alicious prosecution." The first policy, issued by National, covered the period from July 1, 1997, through July 1, 1998. Scottsdale issued the second two policies, each in effect for one year, from July 1, 1998, through July 1, 2000. Each insured the "County of Edgar," its "employees," "elective officers," and "duly elected officials." Thus the three CGL policies insure the county, its employees and elected officials in the event one of them becomes liable because of an offense committed within the policy period.

The district court held that only two allegations in Steidl's complaint describe offenses committed during the policy periods. In January 1998, McFatridge gave false testimony at an evidentiary hearing held to determine whether post-conviction relief was warranted. Then, while Steidl's post-conviction petition was pending, McFatridge perpetuated a publicity campaign to defeat the petition. The court held that neither of these acts triggers coverage under the CGL policies. McFatridge left the state's attorney's office in 1991 and was no longer an elected official in the county when he engaged in these acts. To the extent they constitute "offenses" within the coverage provided, the district court determined that McFatridge acted as a private citizen and not as an insured. It concluded that none of the three CGL policies contemplates coverage for

liability arising from offenses committed by a former official after that official left office.

We agree with the district court. The CGL policies cover "insureds," defined as "employees" and "elected . . . officials." McFatridge left the state's attorney's office in 1991 and was not an elected official during any of the CGL policy periods. Because he was not an insured, none of the misconduct Steidl claims McFatridge committed during the policy periods is a covered occurrence.

The county points to several endorsements to the third CGL policy stating that "all persons who were . . . your lawfully elected . . . officials" are insureds. But the policy covers only insureds for liability arising out of occurrences during the policy period. Steidl's complaint does not claim any misconduct during the third CGL period. If none of McFatridge's offenses occurred during the policy period, there is no duty to defend under that policy.

The county also claims that coverage is triggered under the CGL policies because McFatridge's misconduct was an ongoing tort that continued from Steidl's arrest in 1987 until his release in 2003. But this ignores that the CGL policies provide coverage only if the "offense was committed . . . in the policy period." None of the tort offenses Steidl claims McFatridge committed as state's attorney occurred during any of the policy periods.

The complaint says McFatridge's conduct entitles Steidl to damages for a variety of offenses under both state and federal law. The federal law offenses under 42 U.S.C. § 1983 include false imprisonment, deprivation

of the Steidl's right to a fair trial, wrongful conviction and denial of due process. But none of these offenses occurred during the CGL policy periods. A § 1983 false imprisonment claim seeks damages for injury caused by the plaintiff's detention without probable cause. The false imprisonment ends, and the claim accrues when he is held pursuant to a warrant or other judicially issued process. *Wallace v. Kato*, 549 U.S. 384, 390-93 (2007). McFatridge obtained a warrant to arrest Steidl on February 19, 1987, and a grand jury indicted Steidl on March 10, 1987. So to the extent Steidl's complaint makes out a § 1983 claim in the nature of false arrest, that offense was committed at the very latest in 1987, *before* Steidl was arrested pursuant to a judicially issued warrant, and well before any of the policy periods. Steidl's other federal law claims for unconstitutional conviction, imprisonment, and denial of due process, on the other hand, challenge the validity of his conviction. These claims did not accrue until 2003, because they require Steidl to prove that his "conviction . . . has been reversed on direct appeal, . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Johnson v. Dossey*, 515 F.3d 778, (7th Cir. 2008). So Steidl did not have a complete cause of action, and there was no offense of wrongful conviction or deprivation of due process until June 17, 2003, when the district court issued the writ of habeas corpus. This is long after the CGL policies expired and the insurers have no duty to defend against these claims.

Steidl's state law claims suffer the same fate. He claims damage for false imprisonment, malicious prosecution, intentional infliction of emotional distress and conspiracy under Illinois law. Like his § 1983 claims, Steidl's false arrest ended, and the claim accrued when authorities got a warrant for his arrest. *Mercado v. Vill. of Addison*, 898 N.E.2d 1089, 1092 (Ill. App. Ct. 2008); *Smith v. Boudreau*, 852 N.E.2d 433, 442 (Ill. App. Ct. 2006) (citing *Wallace*, 549 U.S. at 427, as controlling accrual of state *and* federal false arrest claims). Any offenses relating to Steidl being arrested without probable cause were accordingly committed, at the very latest, in February or March 1987, long before any of the policy periods. On the other hand, the state law malicious prosecution claim depends upon the invalidation of Steidl's underlying conviction. *Cult Awareness Network v. Church of Scientology, Inter.*, 685 N.E.2d 1347, 1351 (Ill. 1997). That offense did not occur, for insurance purposes, until June 2003, several years after the CGL policies expired in 2000. *See Sec. Mutual Cas. Ins. Co. v. Harbor Ins.*, 382 N.E.2d 1, 6 (Ill. App. Ct. 1978), *rev'd on other grounds* 397 N.E.2d 839 (Ill. 1979).

### 3.  The Local Governmental and Governmental Employees Tort Immunity Act

The county additionally argues that Illinois law requires it to indemnify the state's attorney's office for any damages it pays to Steidl on his claims. *See* 745 Ill. Comp. Stat. 10/9-102; *Carver v. Sheriff of LaSalle County*, 787 N.E.2d 127, 138-39 (Ill. 2003). Indemnifying the

state's attorney's office for its liability, according to the county, means that it would be "legally obligated to pay damages because of 'personal injury,'" which it claims the policies cover. We find, however, that such a view misreads both the terms of the insurance policies, and the holding in *Carver*, 787 N.E.2d at 139.

*Carver* held that the Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/9-102, requires a county to pay judgments rendered against the sheriff's office, an independently elected county official reliant on the county for operational funding. *Carver*, 787 N.E.2d at 138-39. Courts have subsequently applied this principle to suits involving other independent officials whose operations the county funds. *See, e.g.*, *Horstman v. County of DuPage*, 284 F. Supp. 2d 1125, 1131-32 (N.D. Ill. 2003) (citing *Biggerstaff v. Moran*, 671 N.E.2d 781, 784 (Ill. 1996)). But the obligation to pay the judgment does not mean the county itself is liable to the plaintiff. Rather, the county is only a necessary party to the suit so that, as an insurer or backstop for the independent official, it may "veto improvident settlements." *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003).

Additionally, as we held above, the policies issued to Edgar County cover only "insureds," meaning the county, its elected officials, and employees. These insureds are not covered unless the offense occurs during the policy period. Even though personal injury liability may be the original source of an official's liability, a county's obligation to indemnify that official

for that liability arises by operation of law and is not an occurrence. The county's obligation to pay judgments against McFatridge or the state's attorney's office under § 10/9-102 is not an occurrence or accident as defined by the policies and the insurers have no duty to defend or indemnify the county.

## III. CONCLUSION

For the foregoing reasons, the insurers have no duty to defend or indemnify McFatridge or Edgar County. The decision of the district court is AFFIRMED.